SAVOY, Judge.
This is a tort action instituted by Herbert Joseph Daigle and his wife, Gertis Mae Gott Daigle, arising out of a motor vehicle collision which occurred on July 18, 1971, in Allen Parish, Louisiana. One of the automobiles involved in this collision, a 1970 Ford, was owned and being driven by Jacob Miller, plaintiffs’ son-in-law, and was also occupied by plaintiffs and Mrs. Jacob Miller. The other automobile, a 1971 Plymouth, was being driven by Kim Charles Chastant, the minor son (age' 18) of Elmo Charles Chastant, who resided with his father and mother at the family home in Lafayette, Louisiana.
Suit was instituted against Elmo Chas-tant as father of the minor under the provisions of Articles 237 and 2318 of the Louisiana Civil Code. Lumbermens Mutual Casualty Company was made defendant on the allegation that Lumbermens “had issued to the minor, Kim Charles Chastant, and/or his father, the defendant Elmo Charles Chastant, a public liability insurance policy or policies insuring each and/or both of them against liability for either or both of their negligence
An answer was filed on behalf of both defendants, denying liability on the merits. Defendant, Lumbermens, further alleged in said answer that it had issued its automobile liability policy VZ 184 483 to Kim Chastant with a policy period from June 24, 1971 to December 24, 1971 (which would cover the date of the accident in question, July 18, 1971). Lumbermens further affirmatively alleged that said policy, VZ 184 483, had policy limits of $10,000.00 for each person, and $20,000.00 for each occurrence.
After defendants’ answer was filed, plaintiffs filed an amending petition making Elmo Charles Chastant a defendant *292 “individually and as administrator of the estate of his minor son, Kim Charles Chas-tant.”
Thereafter, defendant, Lumbermens Mutual Casualty Company, moved for summary judgment against plaintiffs insofar as plaintiffs were seeking recovery under Lumbermens’ policy No. LK 467 626 issued to Elmo Charles Chastant, which was a policy covering two Buick automobiles owned by Elmo Chastant. The policy limits on this policy are $50,000.00 for each person, and $100,000.00 for each occurrence.
The motion for summary judgment was tried and judgment was rendered by the trial court on March 27, 1972, granting the motion and dismissing the claim of plaintiffs insofar as those claims pertained to the policy No. LK 467 626 issued by Lum-bermens to Elmo Charles Chastant. There were no written reasons for judgment. Plaintiffs appeal from the judgment, and the issue before this Court is the correctness of the trial court’s ruling in granting the summary judgment.
It appears from the pleadings, affidavits, documents and depositions filed in the record that on and prior to June 24, 1971, Kim Charles Chastant, a minor 18 years of age, was domiciled in Lafayette Parish, Louisiana, where he resided with his parents, Mr. and Mrs. Elmo Charles Chastant. As of June 24, 1971, Elmo Chastant had a policy of insurance with Lumbermens Mutual Casualty Company, No. LK 467 626, on a 1967 Buick LeSabre and a 1969 Buick Skylark. The policy limits were $50,000.00 for each person, and $100,000.00 for each occurrence, with $5,000.00 property damage liability.
On June 24, 1971, Kim Charles Chastant and his father, Elmo Chastant, negotiated the purchase of a 1971 Plymouth Duster automobile from Lafayette Motors of Lafayette, Louisiana. With the express consent of his father, Kim Chastant purchased the 1971 Plymouth automobile, and the title certificate and pink slip were issued in his name. The bank that financed the purchase of the automobile required additional security on the note signed by Kim Chas-tant, and his father co-signed the note at the bank. However, Kim Chastant was to make and did make all required payments on the automobile.
Also, on the date, the automobile was purchased, June 24, 1971, Kim Chastant arranged through Meaux and Plonsky, Inc., an insurance agency in Lafayette, Louisiana, to have an automobile liability insurance policy issued covering the 1971 Plymouth. The policy was issued by Lumber-mens to Kim Chastant that date, and bore policy No. VZ 184 483, with a policy period from June 24, 1971 to December 24, 1971. As heretofore stated, this policy had limits of $10,000.00/$20,000.00. The insurance agency that wrote this policy for Kim Chastant was the same agency that wrote Lumbermens policy No. LK 467 626 to Elmo Chastant covering his two Buick automobiles, with the aforesaid policy limits of $50,000.00/$100,000.00.
According to the affidavits and depositions, the 1971 Plymouth was purchased for the exclusive use of Kim Chastant, and he was considered by his father, Elmo Chastant, to be the owner of the automobile. The automobile was for Kim Chas-tant’s regular use for him to go to and from work, or any other purpose he desired.
Kim Chastant was driving the 1971 Plymouth for a social purpose to meet some friends when the accident occurred on July 18, 1971, at approximately 12:35 A.M. From the pleadings, it appears that very substantial personal injuries were sustained by plaintiffs, and also their son-in-law and their daughter, with whom they were riding, were killed.
Plaintiffs contend that because Kim Chastant was a minor at the time, the purported sale to him of the 1971 Plymouth Duster automobile was an absolute nullity, and the title thereto remained in the vendor, Lafayette Motors, and, accordingly, *293 such vehicle was a “non-owned vehicle” under the Family Automobile Policy with much higher limits issued by defendant, Lumbermens Mutual, to the minor’s father, Elmo Charles Chastant, this being policy No. LK 467 626.
On the question of ownership of the 1971 Plymouth, plaintiffs principally rely on the case of Ellis Electric Company v. Allstate Insurance Company, 153 So.2d 905 (La.App. 1 Cir. 1963). It is true that the language of this case does support plaintiffs’ position, even though it might be distinguished on its facts. Defendants cite the case of Harris v. Ward, 224 So.2d 517 (La.App. 2 Cir. 1969), which flatly rejects the Ellis case insofar as ownership of the vehicle is concerned. The Harris case, supra, was cited with approval in Scott v. Continental Insurance Company, 259 So.2d 391 (La.App. 2 Cir. 1972).
However, in order for us to render a decision in this matter, it is not necessary that we decide as to whether the purported sale to Kim Chastant was a relative or absolute nullity. Under the clear terms of the policy of insurance issued by Lumber-mens to Elmo Chastant, that was filed in evidence, coverage was provided “to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages . . . arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile . . . ”
The 1971 Plymouth could not be an “owned automobile” under the policy, because an “owned automobile” is described in the policy as “a private passenger, farm or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded.” An “owned automobile” is also defined as “a temporary substitute automobile”. There is no contention here that the 1971 Plymouth was a temporary substitute automobile.
As has been heretofore pointed out, the contention of plaintiffs is that the 1971 Plymouth is a “non-owned automobile” because the contract of sale to the minor was void and title remained in the vendor, Lafayette Motors, and that, therefore, Kim Chastant was an insured under Elmo Chas-tant’s policy (LK 467 626) while driving his non-owned automobile. However, “non-owned automobile” is defined in the policy as follows:
“ ‘Non-owned automobile’ means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile.”
Even if it were to be held that the automobile was not technically “owned by” the yninor or his father, it was certainly furnished for the “regular use” of Kim Chas-tant (a “relative” under the policy) as the depositions and affidavits show without dispute that the car was for his own exclusive use and benefit.
The question of what constitutes “regular use” within the meaning of an exclusion clause in an automobile insurance policy such as we have here, is one which must be determined according to the facts and circumstances of each case. As was stated in Lincombe v. State Farm Mutual Automobile Ins. Co., 166 So.2d 920 (La.App. 3 Cir. 1964) :
“As pointed out in Dickerson v. Millers Mutual Fire Ins. Co. of Texas, supra, the purpose which an insurance company has in incorporating in its policy a provision excluding from coverage a non-owned automobile which is furnished for the regular use of the named insured is to protect itself from a situation where an insured could pay for one policy on one vehicle and then be covered by the same insurance while driving any car that he decided to use, including other cars which are under his control and which may be used by him often and at will. By excluding from coverage non-owned automobiles which are furnished for the regular use of the named insured, the insurer avoids regular double *294 coverage although it does extend protection to the casual or infrequent use of automobiles other than the one described in the policy.” (Emphasis theirs.)
“Regular use” suggests a principal use as distinguished from a casual or incidental use. Moreau v. Keller, 144 So.2d 281 (La.App. 4 Cir. 1962).
We conclude, therefore, that the 1971 Plymouth automobile being operated by Kim Chastant was not a “non-owned automobile” within the meaning of policy No. LK 467 626 issued by Lumbermens to Elmo Chastant, and there was consequently no coverage under that policy. Accordingly, the judgment of the trial court in granting Lumbermens’ motion for summary judgment and dismissing plaintiffs’ claims against Lumbermens insofar as those claims pertain to policy No. LK 467 626 issued to Elmo Chastant are concerned, is correct, and is hereby affirmed at appellants’ costs.
Affirmed.