385 So.2d 480 (1980)
Nathan P. BOUDREAUX
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
No. 13285.
Court of Appeal of Louisiana, First Circuit.
May 5, 1980.
Rehearing Denied July 7, 1980.
*482 Victor L. Marcello, Donaldsonville, Robert L. Picou, Houma, for plaintiffs and appellees Nathan P. Boudreaux and Mary Armond.
Robert B. Butler, III, Houma, for defendant and appellant, State Farm Mut. Auto. Ins. Co.
Before ELLIS, LOTTINGER and PONDER, JJ.
PONDER, Judge.
These are two tort suits arising from a one vehicle accident. We intend no discourtesy by the use of given names; we find it necessary to distinguish the different Boudreaux's.
Michael Boudreaux (Michael), a minor, agreed to purchase a car from Jerry Aucoin for $450.00. After Michael paid $300.00 in installments, Aucoin's attorney drew up a bill of sale and a promissory note for $150.00. Michael signed the note and took possession of the vehicle. He kept the car at his sister's home for several days, but then drove the car home and to work that night.
The next day, Michael's father, Nathan Boudreaux (Nathan) objected to Michael's having the car and took the keys from him, saying he would not be responsible for his son's driving the car. There is some confusion concerning whether or not Nathan would have permitted Michael to keep the car if someone else had agreed to be responsible for it. Michael apparently tried unsuccessfully to convince his mother and his sisters to assume the responsibility.
Nathan spoke to Aucoin's parents and told them he would not be responsible for the car. He subsequently spoke to Aucoin and told him Michael was a minor and that he would not be responsible for the car. Aucoin agreed to come to some agreement to take the car back.
Nathan gave Michael the car keys with the understanding Michael was to meet Aucoin in Thibodaux and return the car. Instead, Michael met a friend, John Boudreaux (John), not related to him, and they decided to drive to California.
The boys picked up two hitchhikers in Texas. Michael asked one of them to drive so he could rest. Approximately 10 hours later, while still in Texas, the hitchhiker-driver veered close to a truck, pulled sharply on the steering wheel and pushed down on the accelerator. The car swerved off the road and rolled over several times. Michael, who was asleep in the front seat, was killed instantly. John suffered a broken back and other injuries. The hitchhikers were only slightly injured. Their whereabouts are now unknown.
Nathan sued State Farm Mutual Auto Insurance, his insurer on two other vehicles, for damages for the wrongful death of his son. John's parents sued Nathan and State Farm for their son's injuries.
The trial court found that the driver's gross negligence was the cause of the accident; that neither Michael nor John was neither negligent nor contributorily negligent, and neither had assumed the risk; that the driver was an uninsured motorist at the time of the accident; that the vehicle involved was a non-owned vehicle and had not been furnished for the regular use of Michael under the terms of the State Farm policies; that the two policies should be stacked to provide $55,000.00 uninsured motorist coverage per person and $110,000.00 per accident; that the sale entered into by Michael was null and void. The trial court permitted all parties to recover from State Farm. Michael's parents recovered $55,000.00 for the wrongful death of their son. John recovered $55,000.00 for his injuries.
The issues are: Was the hitchhiker-driver negligent? Was Michael negligent or contributorily negligent? Was John negligent or contributorily negligent? Was the sale to Michael an absolute nullity? If not, did Michael own the car or had the sale been *483 nullified? Was the car an unowned vehicle under the terms of the policy? Was it furnished for the regular use of Michael? Did Michael have permission to drive the car? Did the hitchhiker-driver become a second permittee? Has the driver been proved to be an uninsured motorist? Is Nathan entitled to recover under the uninsured motorists provision of his policies? Is John entitled to recover under the uninsured motorist provision of Nathan's policies? Was an excessive award given to Michael's parents?

NEGLIGENCE
The trial court found that the hitchhiker-driver was negligent. This conclusion is not being seriously contested on appeal. We agree.
Michael was found to be not negligent. We agree. He was not operating the vehicle at the time of the accident; he was asleep. It is argued that he was negligent by allowing the hitchhiker to drive. John, the only witness to testify said he had found no cause to question the driver's competency until the accident occurred. We find insufficient proof of negligence in allowing him to drive.
There was no proof of John's negligence.
We therefore find no negligence, either primary or contributory, on the part of Michael or John. There being no negligence on the part of Michael, Nathan cannot be held liable therefor.

OWNERSHIP OF THE CAR
Contrary to this circuit's holding in Ellis Electric Co. v. Allstate Ins. Co., 153 So.2d 905 (La.App. 1st Cir. 1963) a contract entered into by a minor is not an absolute nullity but rather a relative nullity. La. C.C. Arts. 1785, 1791 and 3542. Harris v. Ward, 224 So.2d 517 (La.App. 2nd Cir. 1969), Scott v. Continental Ins. Co., 259 So.2d 391 (La.App. 2nd Cir. 1972).
The sale between Michael and Aucoin was valid but voidable. The question then becomes was the sale voided by Nathan's actions or was the car owned by Michael at the time of the accident.
Nathan informed Aucoin of Michael's minority and his refusal to take responsibility for the car. Nathan had the authority under C.C. 1794 to either confirm or annul the contract on behalf of his minor son. He left no doubt that his intent was to disaffirm the contract. In the case of a minor's contract, restitution need not be made before the contract can be declared null. D. H. Holmes Co. v. Rena, 34 So.2d 813 (La.App. Orleans, 1948). Therefore, we hold that the contract had been disaffirmed at the time of the accident.
Under the terms of the policies, a non-owned vehicle is an automobile not owned or furnished for the regular use of either the named insured or any relative. State Farm argues that the vehicle was for the regular use of Michael.
The facts of this case point to the opposite conclusion. Michael was forbidden to use the car. The keys were taken from him. Regular use must be more than casual or incidental use. Moreau v. Keller, 144 So.2d 281 (La.App. 4th Cir. 1962); Diagle v. Chastant, 271 So.2d 290 (La.App. 3rd Cir. 1972); cf. Romano v. Girlinghouse, No. 13,198, decided March 31, 1980. The facts indicate that the use of the vehicle was merely incidental to returning the car to Aucoin. There is a question of whether the deviation by Michael changed the use of the car from being merely incidental or casual to regular use. At the time of the accident, Michael had had the car under his control for approximately 24 hours. However, we hold the use was still incidental or casual. The fact that Michael intended to take the car to California and use it regularly in the future is irrelevant.
We therefore hold that the vehicle was a non-owned vehicle not furnished for the regular use of Michael.

PERMISSION TO DRIVE
Aucoin at least impliedly gave Michael permission to drive the vehicle with the intention that the car be returned to him. Though the permission was limited, *484 deviations by the initial permittee, given expressly or impliedly, are immaterial for purposes of insurance coverage. Gathe v. Aetna Casualty & Sur. Co., 345 So.2d 117 (La.App. 1st Cir. 1977) writ refused, 346 So.2d 709.
However, we hold that the hitchhiker was not a second permittee driver. In Morgan v. Matlack, Inc., 342 So.2d 167 (La. 1977) and Hughes v. Southeastern Fidelity Ins. Co., 340 So.2d 293 (La.1976), the Supreme Court found certain specific circumstances in which a permittee driver can give permission to a second permittee. It has even been argued that permission to use should always include the right to give permission to a second permittee. However, in this case, no discretion was given to Michael, certainly not to allow someone else to drive the car while en route to California. He was to drive the car for the purpose of returning it to Aucoin. He certainly did not have any discretion to allow a second permittee to drive it. It was not foreseeable that Michael would allow any one else to drive the car. Therefore, the hitchhiker was not a second permittee driver.

RECOVERY UNDER UNINSURED MOTORIST PROVISIONS
The above reasoning forces the conclusion that the car was not covered under the liability portions of Nathan's policy.
State Farm argues that the plaintiffs have not proved that the driver was uninsured. The statement from the Department of Public Safety does not comply with the literal terms of La.R.S. 22:1406d(6), which, however, is not the exclusive method of proving the non-existence of a liability insurance policy. See Campbell v. American Home Assurance Company, 260 La. 1047, 258 So.2d 81 (1972). We have held above that Nathan's policies did not afford coverage. There is creditable evidence that there was no other insurance covering the driver's operation. We agree with the trial court's conclusion.
The recovery is then limited to the uninsured motorist provisions of State Farm's policies.
A relevant provision of those policies is:
"`Insured' means:
(a) The named insured and any relative;
(b) any other person while occupying an insured automobile; and
(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this Part applies sustained by an insured under (a) or (b) above."
Clearly, both Nathan and Michael were insureds and recovery for Michael's death was proper.
John's situation is quite different. He is not the named insured under Nathan's policy nor is he a relative of Nathan. The definition of insured automobile under the uninsured motorist coverage includes a non-owed automobile only while being operated by the named insured. John would not be entitled to recovery because of injury to another. We are therefore unable to find that he was an insured under Nathan's policies so as to be entitled to recovery thereunder.

DAMAGES
State Farm complains of the amounts awarded to Nathan, Michael's father, and Mary Armond, his mother.
Awards given in other cases are not binding on the court. Each set of facts determines what the appropriate award for that case will be. Michael was a troubled child. However, there is much evidence of a close relationship with his mother and father. The instances when he stayed away from home for a night or two were not to escape a bad home situation. He went to New Orleans and Lafayette on several occasions for fun. His father, in particular, aided Michael in every way he could to receive an education. His father also encouraged him when he decided to work.
The awards to Nathan, Michael's father, and to Mary Armond, Michael's mother, are high but not excessive. They are within the discretion of the trial court.
*485 For these reasons, the judgment in No. 13,285, Nathan P. Boudreaux v. State Farm Mutual Insurance Company, is affirmed at appellant's costs.
AFFIRMED.