JAN M. BELL
v.
JOSEPH JONES, ROBERT JONES, USAGENCIES CASUALTY INSURANCE COMPANY, AND LIBERTY MUTUAL INSURANCE COMPANY.
Number 2007 CW 1470.
Court of Appeal of Louisiana, First Circuit.
March 26, 2008.
DANIEL K. WILLIS, St. Francisville, LA, Counsel for Plaintiff/Appellant Jan M. Bell.
CHARLES A. SCHUTTE, Jr. Baton Rouge, LA, Counsel for Defendant/Appellee Liberty Mutual Fire Insurance Company.
Before: GAIDRY, McDONALD, and McCLENDON, JJ.
McCLENDON, J.
This matter comes before us as an appeal of an appellate judgment rendered by the Nineteenth Judicial District Court. For the following reasons, we convert the appeal to a request for supervisory writs. We further deny the writ and affirm the judgment.

FACTUAL AND PROCEDURAL HISTORY
On December 30, 2001, Jan Bell was driving his car on Greenwell Springs Road when he was involved in a vehicular collision with an automobile operated by Joseph Jones and owned by Robert Jones. On December 6, 2002, Mr. Bell filed suit in Baton Rouge City Court against Joseph and Robert Jones and USAgencies Insurance Company, which was purported to be the liability insurer providing liability coverage for Robert Jones, owner of the vehicle involved "and where Joseph Jones, was the consented driver." Mr. Bell also named as defendant Liberty Mutual Fire Insurance Company (Liberty Mutual), his uninsured motorist (UM) insurer. On November 24, 2003, Liberty Mutual filed an answer admitting that it issued a UM policy with a $10,000 limit[1] to Mr. Bell; however, it denied coverage in the matter. The record contains no pleadings filed by the other parties, nor was there any judgment dismissing those parties from the suit.
On July 27, 2006, the matter was tried. The record reflects that no pre-trial order was filed, and the only parties making appearances were Mr. Bell and Liberty Mutual. The parties entered into a number of stipulations on the record, and various exhibits were filed into evidence. Notably, the parties made no stipulation regarding the uninsured status of Robert and Joseph Jones. The only testimony given at the hearing was that of Mr. Bell.
At the close of all the evidence, Liberty Mutual moved for an involuntary dismissal, arguing that Mr. Bell had failed to establish the uninsured status of the Joneses. The city court left the matter open for the parties to address the motion by submitting memoranda.[2]
In his post-trial memorandum, Mr. Bell argued that although the parties did not stipulate as to the uninsured status of the tortfeasor, it was understood that this was not an issue the parties were contesting. Alternatively, he argued that LSR.S. 22:680(6) does not provide the exclusive means of proving the uninsured status of a tortfeasor, and that his testimony at trial constituted prima facie evidence of uninsured status.[3]
In its post-trial brief, Liberty Mutual argued that Mr. Bell had the burden of proving the uninsured status of the tortfeasor. It further argued that it never stipulated to the issue, nor were there any discussions by counsel regarding the uninsured status of Robert Jones and Joseph Jones, an essential element of plaintiff's cause of action. While Liberty Mutual agreed that LSA-R.S. 22:680(6) does not provide the exclusive means of proving uninsured status, it argued that Mr. Bell failed to offer alternative proof sufficient to establish this necessary element.
On August 24, 2006, the city court signed a judgment granting Liberty Mutual's motion and dismissing Mr. Bell's suit against Liberty Mutual. From this judgment, Mr. Bell appealed to the Nineteenth Judicial District Court. In his appellate brief, Mr. Bell charged that counsel for both parties were in accord that the only issue to be tried was that of quantum, and that coverage or the uninsured status of the tortfeasor was basically a "non-issue." Alternatively, he argued that LSA-R.S. 22:680 did not provide the exclusive means of proving the uninsured status of an offending motorist. Again, he contended that his testimony at the trial sufficiently satisfied his burden of proof as to this element.
In its brief, Liberty Mutual reiterated and expanded upon its previous arguments to the city court, contending that without any stipulation as to uninsured status, Bell had to present at least minimum evidence as to the uninsured status of Joseph Jones and Robert Jones.
Mr. Bell filed a reply brief refuting Liberty's assertions that the Joneses' uninsured status had not been discussed by counsel for the parties prior to trial. He cited LSA-C.C.P. art. 863 and argued that sanctions should be imposed on Liberty Mutual's counsel.
Following oral argument, the Nineteenth Judicial District Court rendered judgment affirming the city court decision. Mr. Bell now seeks to appeal this judgment.

JURISDICTION
Louisiana Constitution Article V, Section 10(A) provides:
Jurisdiction. Except as otherwise provided by this constitution, a court of appeal has appellate jurisdiction of (1) all civil matters, including direct review of administrative agency determinations in worker's compensation matters as heretofore or hereafter provided by law, (2) all matters appealed from family and juvenile courts, and (3) all criminal cases triable by a jury, except as provided in Section 5, Paragraph (D)(2) of this Article. It has supervisory jurisdiction over cases which arise within its circuit.
Section 16 of Article V of the constitution provides, in pertinent part:
(B) Appellate Jurisdiction. A district court shall have appellate jurisdiction as provided by law.
Louisiana Code of Civil Procedure article 5001 states:
A. Except as provided in Paragraph B of this Article, an appeal from a judgment rendered by a parish court or by a city court shall be taken to the court of appeal.
B. Appeal from a judgment rendered by a city court located in the Nineteenth Judicial District shall be taken to the district court of the parish in which the court of original jurisdiction is located.
C. Appeal shall be on the record and shall be taken in the same manner as an appeal from the district court.
Based on the foregoing, this court has no jurisdiction to hear this matter as an appeal because we lack appellate jurisdiction. However, this court does have supervisory jurisdiction over cases that arise within its circuit. LSA-Const. art. V, § 10(A); Foxy's Health and Racquet Club, Inc. v. Allbritton, 03-1054, pp. 3-4 (La.App. 1 Cir. 8/15103), 859 So.2d 151, 153 (per curiam). Accordingly, we exercise such jurisdiction in this matter and convert the "appeal" to an application for supervisory writs, which we hereby consider in order to address the substantive matters raised by Mr. Bell.[4]

DISCUSSION
Louisiana Code of Civil Procedure article 1672(B) provides that in an action tried by the court without a jury, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for involuntary dismissal at the close of the plaintiffs case on the ground that upon the facts and law, the plaintiff has shown no right to relief. In deciding whether to grant a motion for involuntary dismissal, the trial court must weigh and evaluate the evidence up to that point and ascertain whether the plaintiff has presented sufficient evidence in his case in chief to establish his claim by a preponderance of the evidence. LSA-C.C.P. art. 1672(B); see also Taylor v. Tommie's Gaming, 04-2254, p. 6 (La. 5/24/05), 902 So.2d 380, 384; Jackson v. Capitol City Family Health Center, 04-2671, pp. 3-4 (La.App. 1 Cir. 12/22/05), 928 So.2d 129, 131.
When considering a motion for involuntary dismissal, the trial court is not required to review the evidence in a light most favorable to the plaintiff, nor is the plaintiff entitled to any other special inferences in his favor. However, absent circumstances in the record casting suspicion on the reliability of the testimony and sound reasons for its rejection, uncontroverted evidence should be taken as true to establish a fact for which it is offered. Jackson, 04-2671 at p. 4, 928 So.2d at 131. A trial court's decision to grant a motion for involuntary dismissal pursuant to LSA-C.C.P. art. 1672(B) should not be reversed in the absence of manifest or legal error. Id.
While Mr. Bell has contended that the defendants' uninsured status was not an issue to be addressed at trial, we note that Liberty Mutual denied coverage under its UM policy in its pleadings. Furthermore, the record contains no evidence of any agreement between the parties disposing of the issue prior to trial, nor was any stipulation entered at the time of trial. Hence, Mr. Bell could not reasonably believe that he was relieved of providing evidence to satisfy this elements.[5] See Leday v. Safeway Ins. Co. of La., 04-610, pp. 7-8 (La.App. 3 Cir. 11/17/04), 888 So.2d 1084, 1089.
The uninsured or underinsured status of an offending motorist is a condition precedent to an insured's recovery against his UM insurer that must be alleged and proven. This burden rests with plaintiff. Loupe v. Tillman, 367 So.2d 1289, 1290 (La.App. 4 Cir. 1979). Louisiana Revised Statutes 22:680(6) provides:
In any action to enforce a claim under the uninsured motorist provisions of an automobile liability policy the following shall be admissible as prima facie proof that the owner and operator of the vehicle involved did not have automobile liability insurance in effect on the date of the accident in question:
(a) The introduction of sworn notarized affidavits from the owner and the operator of the alleged uninsured vehicle attesting to their current addresses and declaring that they did not have automobile liability insurance in effect covering the vehicle in question on the date of the accident in question. When the owner and the operator of the vehicle in question are the same person, this fact shall be attested to in a single affidavit.
(b) A sworn notarized affidavit by an official of the Department of Public Safety and Corrections to the effect that inquiry has been made pursuant to R.S. 32:871 by depositing the inquiry with the United States mail, postage prepaid, to the address of the owner and operator as shown on the accident report, and that neither the owner nor the operator has responded within thirty days of the inquiry, or that the owner or operator, or both, have responded negatively as to the required security, or a sworn notarized affidavit by an official of the Department of Public Safety and Corrections that said department has not or cannot make an inquiry regarding insurance. This affidavit shall be served by certified mail upon all parties fifteen days prior to introduction into evidence.
(c) Any admissible evidence showing that the owner and operator of the alleged uninsured vehicle was a nonresident or not a citizen of Louisiana on the date of the accident in question, or that the residency and citizenship of the owner or operator of the alleged uninsured vehicle is unknown, together with a sworn notarized affidavit by an official of the Department of Public Safety and Corrections to the effect that on the date of the accident in question, neither the owner nor the operator had in effect a policy of automobile liability insurance.
(d) The effect of the prima facie evidence referred to in (a), (b) and (c) above is to shift the burden of proof from the party or parties alleging the uninsured status of the vehicle in question to their uninsured motorist insurer.
(Emphasis added.)
Thus, in order to recover against Liberty Mutual, his UM insurer, Mr. Bell was required to establish that the owner (Robert Jones) and the operator (Joseph Jones) of the vehicle involved did not have liability insurance or that they were underinsured. LSA-R.S. 22:680(6); Adams v. Allstate Ins. Co., 01-1244, p. 5 (La.App. 5 Cir. 2/26/02), 809 So.2d 1169, 1172. Although LSA-R.S. 22:680(6) provides various means of showing the uninsured status of a motorist, the statute does not suggest that the methods provided are the exclusive means of showing that the motorist lacked insurance or sufficient insurance. See Boudreaux v. State Farm Mut. Auto. Ins. Co., 385 So.2d 480, 484 (La.App. 1 Cir.), writs refused, 392 So.2d 690 and 691 (La. 1980). (recognizing that LSA-R.S. 22:1406, the predecessor of LSA-R.S. 22:680, did not set forth the exclusive method of proving the non-existence of a liability insurance policy.) Louisiana Revised Statutes 22:680(6) simply provides that the specified statutory methods for showing uninsured status constitute prima facie evidence and shifts the burden from the plaintiff to the UM insurer. Hence, alternate methods exist for showing uninsured status, though they may not necessarily constitute prima facie evidence, nor may they automatically shift the burden of proof. Leday, 04-610 at pp. 4-5, 888 So.2d at 1087-1088. Failure of an insured to establish a statutory prima facie case that the owner and operator of the offending vehicle were uninsured or underinsured simply results in the burden remaining with the plaintiff to prove such facts by any other admissible evidence. Jones v. Bickham, 93-836 (La.App. 5 Cir. 2/23/94), 633 So.2d 778, 782.
None of the evidence submitted by Mr. Bell at the trial consisted of the affidavits specified in the statutory scheme. Therefore, the burden of proving that the owner and driver of the offending vehicle were uninsured or underinsured at the time of the accident remained with Mr. Bell, who could prove such facts with any other admissible evidence. See Releford v. Doe, 618 So.2d 464, 466 (La.App. 4 Cir. 1993).
Mr. Bell relies on his own testimony to demonstrate that he met his burden of proof. The extent of that testimony was as follows:
Q. And did you collect any money from the driver who rear-ended you?
A. No, sir.
Q. And do you know why not?
A. Ah, they were saying that the person that was driving the vehicle wasn't authorized to drive the vehicle.
Q. And so when you say "they" you mean the Insurance Company?
A. Yes, sir.
Clearly, such testimony fails to establish the uninsured or underinsured status of the owner, Robert Jones, and the operator, Joseph Jones. At best, it merely demonstrates that Joseph Jones, as a non-permissive user, was not provided coverage under Robert Jones' liability policy. It certainly does not address whether Joseph Jones had his own liability insurance. Accordingly, we conclude that the record contains sufficient evidence to support the district court's decision. Therefore, we deny the writ and affirm the district court's judgment.

CONCLUSION
For the foregoing reasons, Mr. Bell's writ is denied, and the judgment is affirmed. All costs associated with this supervisory writ are assessed to Jan Bell.
WRIT DENIED. JUDGMENT AFFIRMED.
NOTES
[1] It was later established that the UM policy had a $20,000 limit.
[2] The matter also was left open for Mr. Bell to submit the deposition of his doctor.
[3] Attached to Mr. Bell's memorandum were various documents that had not been entered into evidence, and thus could not be considered by the city court.
[4] In brief to this court, Mr. Bell references the Rules of Professional Conduct as well as the sanctions allowed by LSA-C.C.P, art. 863 with regard to Liberty Mutual's counsel. It is apparent that these issues were not directly raised at trial. Suffice it to say that: (1) Mr. Bell has never filed a motion for sanctions as required by LSA-C.C.P. art. 863; and, (2) the Louisiana Supreme Court has original jurisdiction over bar disciplinary matters such as a lawyer's failure to comply with the Rules of Professional Conduct. LSA-Const. art. V, § 5(B). Accordingly, we limit our review to the propriety of the judgment based on Liberty Mutual's motion for an involuntary dismissal.
[5] See note 4, infra.