WATSON, Judge ad hoc.
Plaintiff, Susan Elizabeth Thibodeaux, filed this suit to recover for medical expenses and personal injuries resulting from an automobile accident in Baton Rouge, Louisiana, 'on July 18, 1970, at the corner of Iberville and South Streets. Plaintiff, Antoinette C. Thibodeaux, is the older sister of Susan and the owner of the car driven by Susan on the occasion of the accident; she joined in the suit to recover for property damage to her 1965 Chevrolet automobile. Although the record is not entirely clear on the point, Antoinette’s claim was apparently paid prior to the date of trial. Named as defendants were Lee Thomas Dixon, whose 1968 Cadillac collided with the Chevrolet, and his liability insurer, Fireman’s Fund American Insurance Company.
The accident occurred when defendant Dixon, southbound on Iberville, attempted to turn right onto South Boulevard and collided with the driver’s side of the automobile driven by Susan Thibodeaux.
The trial court found defendant Dixon to be at fault in the accident and gave plaintiff a judgment for $1,230.40. Only the amount of this judgment is now in dispute.
Plaintiff has perfected this appeal, alleging that, in view of her injuries and medical expenses of $999.90, the award of the trial court is inadequate. The defendants claim that Susan sustained, at most, a mild cervical strain, and that the trial court’s award is within its discretion.
Plaintiff also alleges error by the trial court in refusing to admit the testimony of Susan’s supervisor, Roger Bryson, on the issue of lost wages. This testimony was excluded because Mr. Bryson’s name was not included as a witness on the pretrial order. An offer of proof was made. Susan’s attorney attributes the omission on the pretrial order to the fact that Susan had two other attorneys prior to the employment of her present attorney. The latter was engaged less than a month prior to the trial and was not present at the pretrial conference and order.
Plaintiff contends that any element of surprise in Mr. Bryson’s testimony could have been removed by granting plaintiff’s motion for a continuance. It is alleged that the trial court erred in failing to grant this motion.
One problem in evaluating Susan’s injuries is that she did not seek medical treatment until six weeks to two months following the accident. Plaintiff testified that the symptoms of her injuries commenced one to three weeks after the accident, when she began having headaches. She first went to her gynecologist, Dr. Abraham, but the record does not reflect when she had this appointment. In any event, Dr. Abraham did not examine or treat the plaintiff but referred her to Dr. Douglas Davidson, who testified as an expert in general practice. Dr. Davidson first saw plaintiff on September 4, 1970, when she complained of severe neck aches and headaches. His examination showed mild bilateral muscle spasms in the trapezius. His diagnosis was: “. . . acute cervical strain with secondary headaches.” Dr. Davidson saw plaintiff five times between his first examination and November 6, 1970. During this time her symptoms indicated a deterioration in her condition. He noted an initial weakness in the left hand, and by October 29, her ability to grip had been reduced to 50 or 60 per cent of normal in both hands. Dr. Davidson prescribed muscle relaxants and analgesics, as well as physical therapy. Plaintiff called Dr. Davidson many times in addition to her five appointments.
As a result of plaintiff’s failure to improve, Dr. Davidson referred plaintiff to Dr. Thomas B. Flynn. Plaintiff did not *923 like Dr. Flynn and was referred to Dr. William L. Fisher, who testified as an expert in the field of neurosurgery. He saw plaintiff on January 18, 1971, and found her to be completely normal.
Defendants argue that plaintiff’s other medical witness, Dr. Louis L. Sherman, who testified as an expert in the field of radiology and general practice, should be given little consideration. One basis for this claim is that Dr. Sherman interviewed the plaintiff on June 30, 1971, but did not commence treatment until December 15, 1971. Plaintiff explained this gap as follows: (1) Dr. Sherman said that his treatments were painful and sometimes had adverse effects; and (2) she wished to save sufficient funds to afford the time and money for the treatments. Defendants’ counsel also questions Dr. Sherman’s qualifications, although Dr. Sherman testified that he has a B.S., M.S. and Ph.D. in pharmacy from the University of Maryland, as well as an M.D. from the University of Louisville Medical School. He interned at •Parkland Hospital in Dallas, Texas; was a resident in radiology at the Wayne State Receiving Hospital in Detroit, Michigan; is a Diplómate of the American Board of Radiology; a Fellow of the American College of Radiology; and was an instructor in radiology at the Wayne State Medical School in 1945. No evidence was introduced to show that Dr. Sherman’s qualifications should not be taken at face value, other than his testimony that he was not accepted for membership in the East Baton Rouge Parish Medical Society when he moved to Baton Rouge in 1967.
Dr. Sherman testified that he treated plaintiff with prolotherapy, a treatment consisting of injections of an anesthetic-glucose mixture at various trigger points of pain. His interest in prolotherapy arose as a result of a personal disc removal and spinal fusion, the residual pain of which was cured by prolotherapy. Dr. Sherman testified that a prolotherapy association has been listed in the Journal of the American Medical Association since 1960, although there are apparently no other practitioners of prolotheraphy in the Baton Rouge area.
The deposition of Dr. Charles A. Strange was introduced in evidence by defendants. Dr. Strange, stipulated as an expert in the field of orthopedic surgery, saw plaintiff on May 10, 1972. Dr. Strange found no objective symptoms but felt that plaintiff initially had muscular injuries to her neck and low back or cervical and lumbosacral sprains. He testified that he had no reason to doubt plaintiff’s veracity but felt that her symptoms had persisted for a surprisingly long time.
In view of the conflict in the medical testimony, the judgment of the trial court is not so inadequate as to constitute an abuse of its discretion. LSA-C.C. art. 1934; Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964), and Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967).
In regard to the alleged error of the trial court in neither allowing Mr. Bryson to testify as to plaintiff’s loss of wages nor granting plaintiff a continuance, we have examined the pretrial order. There, the defendants “. . . allege that petitioner’s injuries, if any, were minor and that she has no claim for loss of wages or employment.” (TR. 10). Further, under “Amendments”, “Susan Thibodeaux may amend to include allegations of loss of income from injuries sustained.” (TR. 11). This pretrial order was signed by Susan’s attorney on January 16, 1973. On January 22, 1973, this attorney was removed as counsel of record at his request, and, on January 30, 1973, Susan’s present attorney was entered as counsel of record. On February 27, 1973, the day of trial, plaintiff’s petition was amended according to the pretrial order to claim loss of earnings. Counsel for defendants expressly stated *924 that he had no objection to plaintiff’s amended petition.
Since the pretrial order stated that plaintiff’s petition might be amended to include a claim for loss of earnings, inherent in this would be the right to introduce evidence on the point. Otherwise, the privilege granted would be meaningless.
“A rule of court requiring a pre-trial conference and the preparation of a pre-trial order is for the purpose of regulating procedure and practice. The most obvious end result to be obtained by the practice of requiring counsel to list the witnesses they intend to call is to prevent surprise. Such rules are to be construed reasonably and with consideration of their purpose. We recognize the trial courts are the best exponents of their own rules and should be given wide discretion in their interpretation, but here we find the trial judge abused his discretion. His ruling has done violence to the purpose for which pre-trial procedure was developed.
* * * * * *
“Article 1551 of the Code of Civil Procedure providing for pre-trial procedure permits the modification of such orders at the trial to prevent manifest injustice.” Wishom v. Ford Motor Company, 256 So.2d 298, at 302 (La.App. 1 Cir. 1971).
Therefore, we feel that the plaintiff would have been entitled to either Mr. Bryson’s testimony or a continuance, were it not for the fact that plaintiff failed to comply with an order obtained by defendants ordering her to produce and permit copying of her income tax returns for the years 1969, 1970 and 1971. When she failed to comply with this order, the trial court was justified in refusing to permit testimony on the subject of the order; that is, her income and/or loss of wages. LSA-C.C.P. art. 1513.
It is true that income tax returns are confidential and their production can only be ordered when the court is convinced that such action is relevant and necessary. Bianchi v. Pattison Pontiac Co., 258 So.2d 388 (La.App. 4 Cir. 1972). However, the trial court has wide latitude in issuing such orders. American Mark Distributing Corp. v. Louisville & N. R. Co., 180 So.2d 869 (La.App. 4 Cir. 1965). No motion was made by plaintiff in opposition to the order to produce her income tax returns, and she was obliged to produce the documents or suffer the consequences thereof.
Costs of this appeal are taxed against appellant.
Affirmed.