ARMSTRONG, Judge.
Defendant, Western Fidelity, appeals the trial court’s judgment finding that Western Fidelity was obligated to pay the claim of Roland Burst in the amount of $38,249.14 and finding that Western Fidelity had acted unreasonably in denying Burst’s claim and thus awarded attorney fees in the amount of $15,143.33 in favor of Burst. Burst appeals the quantum of damages and requests that the judgment be affirmed and amended to increase attorney fees, expert fees, legal interest and costs.
Western Fidelity issued an accident/health and life insurance policy to Roland C. Burst, Jr. with effective coverage as of September 8, 1986. In April, 1987, Burst suffered a traumatic injury to his leg causing ulceration of the underlying muscle tissue. This injury occurred during the effective time of coverage under the aforesaid policy and eventually resulted in surgery to the leg performed by Dr. Thomas Crais in October, 1987. Despite the fact that Western Fidelity had previously made payment to Burst for other unrelated claims, Western Fidelity refused payment of medical bills incurred by Burst for the treatment of this tissue ulceration injury and surgery.
On May 16, 1988, Burst filed suit against Western Fidelity alleging non-payment of medical benefits due under the policy. Western Fidelity answered asserting the defense of pre-existing condition and the defense of misrepresentation on the policy application. Additionally Western Fidelity denied that it was arbitrary and capricious for failing to pay this claim.
On November 18, 1988, Burst filed a Notice of Deposition of Western Fidelity. On November 22, 1988, Western Fidelity filed a Motion to Upset the Deposition on the ground that the deposition improperly sought to depose in New Orleans, Dr. William D. Moehlman, a Texas resident. A hearing was held on December 16, 1988 and Western Fidelity’s motion to upset the deposition was denied. Supervisory writs were taken to the Fourth Circuit by Western Fidelity but were denied on February 22, 1989.
On February 1, 1989, Burst filed a Motion for Contempt against Western Fidelity for its failure to produce Dr. Moehlman for the deposition scheduled in New Orleans. This motion was not ruled on by the trial court until March 1st, a week before trial.
During the interim, Western Fidelity filed a Notice of Intent to Depose Dr. Moehlman in Texas and Burst promptly filed a motion to quash the deposition. Burst’s motion was granted and Western Fidelity thereafter took supervisory writs to the Fourth Circuit. The writs were denied on February 22, 1989.
At the March 1st hearing, the trial court granted Burst’s Motion for Contempt and imposed sanctions as follows: the court disallowed any evidence concerning the fact that Burst suffered from a “pre-exist-ing condition,” the court disallowed any evidence concerning misrepresentation made by Burst on his policy application, *982 and the court disallowed any reference to the report of Dr. Moehlman. Western Fidelity did not seek writs on this ruling.
Trial was held before a jury on March 7, 1989. A verdict was returned by the jury wherein it found that Western Fidelity was obligated to pay the claims of Burst amounting to $38,249.14 and that Western Fidelity had acted unreasonably in denying these claims so that the court was to automatically impose penalties of 100% of the claim and reasonable attorney’s fees pursuant to La. R.S. 22:657. The court set the attorney’s fees at $15,143.33 based on an hourly computation.
Western Fidelity thereafter appealed suspensively from the judgment signed March 9, 1989 and Burst answered the appeal seeking interest, costs, expert fees, and an increase in the award of attorney fees to be in accordance with the evidence presented at trial, and an award of attorney’s fees/costs for the present appeal.
On appeal Western Fidelity argues that the trial court erred: 1) in failing to quash Burst’s deposition of Western Fidelity; 2) in striking the affirmative defenses of “pre-existing condition” and “material misrepresentation” and in refusing to allow evidence concerning the issue of whether Western Fidelity was arbitrary and capricious in failing to pay medical benefits under Burst’s policy; 3) and when it granted Burst’s motion to quash Western Fidelity’s deposition of Dr. William D. Moehlman. As its fourth assignment of error Western Fidelity argues that the jury’s verdict was contrary to the law and evidence.
In its first assignment of error Western Fidelity relies on La.C.C.P. article 1442 in arguing that because there was no one who could be designated and who could consent to testify to the matters requested in Burst’s notice of deposition that the deposition should have been quashed.
Western Fidelity asserts that Dr. Moehl-man is the only individual “personally and intimately familiar with the opinions espoused in a medical report of Dr. William D. Moehlman, M.D.” Yet Dr. Moehlman is not an employee of Western Fidelity and he is a resident of Texas where he maintains a family practice. Western Fidelity argues that he is clearly outside the subpoena power of a Louisiana court. La.C.C.P. articles 1352 and 1356. We submit to the court’s previous ruling on this issue in writ order # 89-C 0324.
In its second assignment of error Western Fidelity argues that in striking both of its defenses to Burst’s claim for payment as sanctions the trial court essentially dismissed its case. Western Fidelity cites Skidmore v. Salvadras, 496 So.2d 435 (La.App. 1st Cir.1986) to argue that the sanction of dismissal is most severe and may be imposed only in extreme cases. Western Fidelity also cites Fulgham v. An Unknown Police Officer, 480 So.2d 417 (La.App. 4th Cir.1985). Fulgham states that a dismissal of a party’s claim or defense should only be imposed when the party is clearly aware that its noncompliance will result in the dismissal of its defenses. See also: Kile v. Plaisance, 488 So.2d 290 (La.App. 3d Cir.1986).
We do not agree that Western Fidelity’s case was effectively dismissed as a result of the sanctions imposed. Western Fidelity was an active participant in the trial in which Burst was obligated to prove his case. Burst testified as did the surgeon who rendered the treatment that comprised Burst’s claim. Western Fidelity had the opportunity to discredit them or to challenge their testimony.
The cases which Western Fidelity cites are distinguishable for that reason. Fulg-ham involved an actual dismissal. Skid-more is distinguishable not only because the court of appeal found that disallowing a party-plaintiff from testifying was the equivalent of dismissing his claim but also because it was an especially harsh sanction considering that the inability of the defendants to depose the plaintiff was not a recurring problem.
The issue in the Kile opinion was one of prejudice. The court wrote:
Although it does appear that defendant was not given an opportunity to see the original exhibits until shortly before trial, it is not clear that he was not, in fact, *983 provided with copies of these exhibits by plaintiffs’ attorney sometime before trial. What is clear, is that defendant did have access to copies of these exhibits well in advance of trial. There is no claim that there was any variance between the copies and the originals defendant had in his possession. Defendant neither shows nor claims any prejudice resulting from any alleged failure of plaintiffs to provide the exhibits.
In the instant case, it is clear that the sanctions were imposed, in 'part, to eliminate the prejudice against Burst that would have resulted had Western Fidelity proceeded with evidence that it had virtually concealed during discovery. On the other hand, as in the Kile opinion, Western Fidelity was not prejudiced in not presenting this defense. We reviewed the proffered testimony by Western Fidelity, offered to prove that Burst’s claim was properly denied as a pre-existing condition. The evidence revealed that the cause of the tissue ulceration which plaintiff suffered in 1987 was direct trauma to the pretibular area. The minor cut that Burst was treated for in 1983 was in the same area but there was no indication of any on-going chronic disease process that could be construed as a condition pre-existing the September 9, 1986 effective date of coverage.
Furthermore, the trial court has wide latitude in issuing sanctions. See: La.C.C.P. art. 1471; Thibodeaux v. Dixon, 288 So.2d 921 (La.App 1st Cir.1973); Castille v. Melancon, 410 So.2d 1224 (La.App. 3d Cir.1982). It is also suggestive that Western Fidelity sought writs on previous rulings by the trial court but it failed to seek writs on the trial court’s imposition of sanctions.
Western Fidelity also argues that the trial court’s sanction against evidence of misrepresentation made by Burst on his •application for insurance was improper. Western Fidelity does not appear to be prejudiced by this sanction either. Burst testified that he made a full disclosure to the agent and had no intention of misrepresenting his physical condition. La.R.S. 22:619 requires “an intent to deceive” along with material misrepresentation. See also: Coleman v. Occidental Life Insurance Company of North Carolina, 418 So.2d 645 (La.1982); Cousin v. Page, 372 So.2d 1231 (La.1979); Perkins v. United American Insurance Company, 505 So.2d 206 (La.App. 3d Cir.1987); Gay v. United Benefit Life Insurance Company, 233 La. 226, 96 So.2d 497 (1957). We find that there was neither the intent to deceive or material misrepresentation on the part of Burst. It was clearly within the trial court’s discretion to impose the sanctions and Western Fidelity was not prejudiced by the trial court’s ruling.
Thirdly, Western Fidelity argues that under La.C.C.P. article 1450 it was entitled to use Dr. Moehlman’s deposition at trial because he was an unavailable witness, i.e. he resided out-of-state. See: Giesler v. U.S. Fidelity and Guaranty, 498 So.2d 292 (La.App. 4th Cir.1986). We submit to the court’s previous ruling on this issue in writ order # 89-C 0324.
As its fourth assignment of error Western Fidelity cites several exclusions contained in the policy. These exclusions were $240.00, an amount in excess of the semiprivate room rate; $1.00 miscellaneous personal items; $2,500.00, assistant surgeon bill of Dr. Dupin; and $140.18, for take home drugs from the hospital pharmacy. Western Fidelity argues that these amounts' should have been deducted from the total amount of bills submitted by Burst.
The benefits provision of the policy are contained under Part I, Subsection A. Hospital and Medical Expense Benefits, which specifies that if an eligible insured is confined to a hospital as a resident bed patient that the policy will extend coverage for a semi-private room only.
The last paragraph of that section states:
In addition, we will pay 100% in full the usual, customary and regular charges incurred during Your stay for any other necessary hospital expenses not shown in the above list. Expenses incurred for comfort or convenience items such as *984 telephone, radio, television or take home items are not covered.
This provision suggests that miscellaneous items which Western Fidelity characterizes as telephone and kleenex and take home drugs are not covered by the policy. Therefore the trial court erred by including $1.00 miscellaneous and $140.18 take home pharmacy as part of Burst’s award.
Regarding assistant surgeons the policy states:
If as a result of such injury or such sickness, an Eligible Insured shall have surgical operations performed by a licensed surgeon, the Company will pay 100% in full of the usual, customary and regular charge by the primary surgeon for the surgical operations. The operations must be performed while the Eligible Insured is in the hospital during a confinement for which benefits are payable under Paragraph A. Confinement to a hospital is required as a condition for payment of benefits under this Paragraph.
Burst argues that Western Fidelity pre-certified his claim at which time it was revealed that there would be two assistant surgeons. Furthermore the record indicates that the surgery which Burst underwent is of the team nature involving a primary physician and assistants. It is Western Fidelity’s position that pre-certifi-cation is not a pre-guarantee of payment and that the policy is limited by the exclusions and limitations contained in the policy. It insists that because the policy refers to assistant surgeon in the singular it was contemplated that coverage would be extended for only one assistant surgeon per operation.
We do not agree with Western Fidelity’s position. The record supports that the surgery Mr. Burst received required more than one assistant surgeon. If the policy clearly disallowed this Mr. Burst would have been notified at the time of pre-certifi-cation. The fact that he was not suggests that coverage for assistant surgeons under the policy is decided on a case by case basis. We find no error by the trial court in including an award for a second assistant surgeon.
In Burst’s answer to the appeal, he submits that reasonable attorney fees should have been set at 33% of the total judgment or alternatively that he be granted an additional amount of attorney’s fees to cover the defense of the present appeal. He also points out that the trial court’s judgment was silent as to an expert fee for Dr. Crais who testified on his behalf and as to an award for legal interest and cost although such had been prayed for in the original petition.
We affirm the trial court’s award of attorney’s fees. It is within its discretion to compute attorney’s fees on an hourly basis. Burst is entitled to attorney’s fees for the present appeal as well. However we find that Burst’s demand for $5,000.00 is excessive. An award of $2,500.00 is reasonable. Burst is entitled to costs and legal interest on both the principal and attorney fees from the date of judgment. We also grant an expert fee to Dr. Crais the omission of which was likely an oversight.
We amend the judgment ,of the trial court to: (1) deduct amounts excludable under the policy — the $240.00 room charge, the $1.00 miscellaneous charge, and the $140.18 take-home pharmacy charge, (2) award plaintiff $2,500.00 in attorney fees for this appeal, (3) assess costs at the trial and appellate court levels against defendant including an expert witness fee for Dr. Thomas Crais in the amount of $250.00 and (4) award plaintiff legal interest (a) on the principal amount from the date of judicial demand, (b) on the attorney’s fees at the trial court level from the date of the trial court judgment, March 9, 1989, (c) on the attorney’s fees at the appellate court level from the date this decision is rendered.
AMENDED, AFFIRMED AS AMENDED.
SCHOTT, C.J., concurs.