662 So.2d 96 (1995)
Mark MALLOY
v.
Steven VANWINKLE and State Farm Fire and Casualty Insurance Company.
No. 94-CA-2060.
Court of Appeal of Louisiana, Fourth Circuit.
September 28, 1995.
*98 Darleen M. Jacobs, A Professional Law Corporation, New Orleans, and James L. Yates, New Orleans, for plaintiff.
Matthew J. Ungarino, David Bordelon, Ungarino & Eckert, Metairie, for defendant.
Before CIACCIO, ARMSTRONG and JONES, JJ.
ARMSTRONG, Judge.
This is an appeal by the defendant from a jury verdict and judgment in an uninsured motorist liability insurance case. The defendant contests liability but not quantum. The plaintiff has cross-appealed as to a finding of 30% comparative fault of the plaintiff. The plaintiff also cross-appeals on the ground the quantum of attorney's fees awarded was inadequate. As to all of those points of appeal and cross-appeal, we affirm. We do, however, grant the plaintiff's request for additional *99 attorney's fees for the representation of the plaintiff in opposing the defendant's appeal.
The plaintiff, Mark Malloy, went to Gulfport, Mississippi to visit the beach. While there, he met Steven Vanwinkle. They spent some time on the beach there and Mr. Malloy drank some beer and he saw Mr. Vanwinkle drink one beer. That evening, while at the home of Mr. Vanwinkle or someone else in Gulfport, Mr. Malloy drank peppermint schnapps and observed Mr. Vanwinkle drink one shot of peppermint schnapps. Also that evening, Mr. Vanwinkle started to drive Mr. Malloy back to where Mr. Malloy had left his car. On the way, Mr. Vanwinkle's car hit a tree and Mr. Malloy was injured.
Mr. Malloy sued Mr. Vanwinkle as tortfeasor. However, Mr. Vanwinkle never made any appearance in this action and had no involvement in the trial below. In fact, Mr. Vanwinkle did not even testify either in person or by deposition.
Mr. Malloy sued State Farm Mutual Automobile Insurance Company ("State Farm") as his alleged uninsured motorist ("UM") insurer. Mr. Malloy lived with his parents. He alleges that his parents had a State Farm insurance policy which included UM coverage and that, as a member of their household, he was covered. He also alleged that Mr. Vanwinkle had no liability insurance.
State Farm removed this action to federal court under diversity jurisdiction. Mr. Malloy moved to remand this action to Louisiana State court. In connection with that motion to remand, a stipulation was entered into which provided that Mr. Malloy could not recover more than $50,000 exclusive of interest and costs. Based upon that stipulation, and the federal diversity jurisdiction requirement that more than $50,000 exclusive of interest and costs be in controversy, the federal court remanded this action to Louisiana state court. The case was tried, the jury found for the plaintiff and the trial court awarded statutory penalties and attorney's fees for unreasonable refusal to tender insurance benefits.
State Farm's first argument on appeal is that Mr. Malloy did not prove that State Farm provided his parents (and him) UM coverage because the insurance policy was not introduced into evidence. Initially, we note that the record contains a State Farm automobile insurance policy renewal notice to Mr. Malloy's parents, so it does appear that they had State Farm insurance.
More importantly, and as Mr. Malloy argues on appeal, the issue of UM coverage was not raised by State Farm in the pretrial order. As per the trial court's direction, State Farm included in the pretrial order a statement of the facts (as State Farm contended them to be) and a list of contested issues of fact and law. There is absolutely no hint anywhere in State Farm's pretrial order submission that State Farm denied issuing a policy with UM coverage to Mr. Malloy's parents or that State Farm otherwise contested coverage. Obviously, State Farm would have records of whether it had issued a policy with UM coverage to Mr. Malloy's parents and should have raised the issue in the pretrial order if it had grounds to do so.
One purpose of the pretrial order is to narrow the issues for trial to what is really in dispute and save the time and effort that otherwise would be expended proving facts as to which there is no real contest. See La.Code Civ.Proc. art. 1551 (and the Reporter's foreword thereto). The parties and their counsel are entitled to rely on the pretrial order. See generally Cole v. Celotex Corp., 599 So.2d 1058 (La.1992). To allow State Farm to raise an issue as to UM coverage on appeal, when it was not raised in the pretrial order, would be unfair to Mr. Malloy.
State Farm's second argument on appeal is that Mr. Malloy did not prove, with proper evidence, that Mr. Vanwinkle was uninsured. State Farm points out that Mr. Malloy did not use the methods provided by La.R.S. 22:1406(D)(6) to prove that Mr. Vanwinkle was uninsured. However, the methods of proving uninsured status provided by that statute are not exclusive and uninsured status can be proven by other evidence. E.g., Releford v. Doe, 618 So.2d 464 (La.App. 4th Cir.1993); Fuller v. Moser, 539 So.2d 784 (La.App. 3rd Cir.1989); Boudreaux v. State *100 Farm Mut. Auto. Ins. Co., 385 So.2d 480, 484 (La.App. 1st Cir.1980).
The evidence that Mr. Vanwinkle was uninsured was an exchange of letters between him and Mr. Malloy's counsel. Specifically, Mr. Malloy's counsel wrote to Mr. Vanwinkle on August 15, 1990, stating that she represented Mr. Malloy in connection with the accident of July 31, 1990, and requesting that he have his liability insurer contact her. On September 12, 1990, Mr. Malloy's counsel received a reply letter, bearing the signature "Steven Vanwinkle" referencing Mr. Mallory and the July 31, 1990 accident date, and stating in relevant part: "Unfortunately, I have no insurance of any kind, also I am a student with limited funds. My only asset [his car] was lost in the accident."
State Farm argues that the Vanwinkle letter was not authenticated and, thus, not admissible. Authentication is the process whereby something is shown to be what it purports to be. La.Code Evid. art. 901 See G.W. Pugh, et al, Handbook On Louisiana Evidence Law at 504 (1995). In a situation like the present, a letter may be authenticated under the "reply letter doctrine."
When a letter, signed with the purported signature of X, is received "out of the blue," with no previous correspondence, the traditional "show me" skepticism of the common law trial practice prevails, and the purported signature is not accepted as authentication, unless authenticity is confirmed by additional facts.
One circumstance recognized as sufficient is the fact that the letter discloses knowledge that only the purported signer would be likely to have. Moreover, a convenient practice recognizes that if a letter has been written to X, and the letter now offered in evidence purports to be written by X and purports to be a reply to the first letter (that is either refers to it, or is responsive to its terms) and has been received without unusual delay, these facts authenticate it as a reply letter. This result may be rested upon the knowledge-principle, mentioned above. In view of the regularity of the mails the first letter would almost invariably come exclusively into the hands of X, or those authorized to act for him, who would alone know of the terms of the letter. It is supported also by the fact that in common experience we know that reply letters do come from the person addressed in the first letter.
2. J.W. Strong, ed., McCormick On Evidence § 225 at 49-50 (4th ed. 1992) (emphasis added).

Reply letter doctrine. The reply letter doctrine, long recognized at common law, represents but a particular application of the more general method of authentication here discussed. If it can be shown that an inquiry was directed to a particular person, and that in due course an apparent reply was received, which expressly refers to or seems implicitly to acknowledge the earlier inquiry, these facts suffice as the basis for concluding that the reply was sent by the person to whom the inquiry was directed. Only he was likely to have received the inquiry; hence only he was likely to know of it, and to respond. In the typical case, both inquiry and reply are by means of letters sent through the mail, whence comes the name "reply letter doctrine." But there is nothing magic in form, and the principle applies equally to a written reply to an oral inquiry, to a telephonic response to an oral or written inquiry, and so forth, regardless of whether the mails are involved. The essentials are to establish by evidence independent of the reply that the original inquiry was put, and to find in the reply itself (or for that matter in surrounding circumstances) some indication that the author was indeed responding to the inquiry, for these points are the necessary predicate underlying the inference that the author of the reply is the person to whom the inquiry was put.
5 C.B. Mueller, Federal Evidence § 518 at 50-51 (2nd ed. 1994).
In fact, the reply letter doctrine has been applied in the exact same context as the present case (proof of uninsured status) by the Supreme Court in Campbell v. American Home Assur Co., 260 La. 1047, 258 So.2d 81, 85 (1972). See also G.W. Pugh, Louisiana Evidence Law at 445 (1974) (discussing *101 Campbell). Thus, we are confident that Mr. Vanwinkle's letter was properly authenticated.
State Farm has not raised the issue of whether Mr. Vanwinkle's letter is hearsay. In any event, the letter would be admissible under the "statement against interest" exception to the hearsay rule, La.Code Evid. art. 804.B(3), because, by admitting lack of insurance, Mr. Vanwinkle was admitting to a violation of Mississippi's Motor Vehicle Financial Responsibility Law. Miss.Stat. 303.010 et seq. See Campbell, 258 So.2d at 85-86. This hearsay exception applies only when the declarant is unavailable to testify in court, La.Code Evid. art. 804. However, as Mr. Vanwinkle lives in Mississippi, beyond the subpoena power of the trial court, and as Mr. Malloy testified as to being unable to locate Mr. Vanwinkle, it is apparent that Mr. Vanwinkle was unavailable. La.Code Evid. art. 804.A(5).
Mr. Vanwinkle's letter was admitted properly. Mr. Malloy proved that Mr. Vanwinkle was uninsured.
State Farm's third argument on appeal is that it should not have been subject to penalties for arbitrary and capricious failure to pay insurance benefits because Mr. Malloy did not present State Farm with adequate proof of loss. See generally 15 W.S. McKenzie and H.A. Johnston, Louisiana Civil Law Treatise: Insurance Law and Practice § 131 (1986) (discussing penalties and adequacy of proof of loss).
State Farm's first point as to this argument is that there was not adequate proof as to coverage. This is identical to State Farm's first argument on appeal and what we have said as to that argument is equally applicable to this point.
State Farm's second point as to this argument is that there was no adequate proof as to Mr. Vanwinkle's uninsured status. This is identical to State Farm's second argument and what we have said as to that argument is equally applicable to this point. We do, however, emphasize that there was no evidence whatsoever to contradict Mr. Vanwinkle's letter which stated that he had no insurance.
State Farm's Third point as to this argument is that Mr. Malloy was assessed 30% comparative negligence (apparently, for deciding to ride with Mr. Vanwinkle after seeing him drinking) and could have been found 100% at fault. We think that it would not have been reasonable for State Farm to withhold unconditional tender of any payment to Mr. Malloy based upon the expectation that the jury could find him 100% at fault. For the passenger to be found 100% at fault for riding with a driver who had been drinking, and the driver who drove after drinking to be found 0% at fault, would be such an anomalous result that, under these facts, it might well be manifest error. And, of course, with the abolition of assumption of the risk as a complete bar to recovery, and the subsuming of that defense into the comparative fault analysis, riding with a driver known to be impaired by alcohol reduces recovery but does not eliminate recovery. See Molbert v. Toepfer, 550 So.2d 183, 186 (La.1989); Nowell v. State Farm Mut. Auto. Ins. Co., 576 So.2d 77, 80-81 (La.App. 2nd Cir.), writ denied, 580 So.2d 923 (La.1991). Thus, because some amount undoubtedly was due, we cannot say that the jury erred in finding that it was arbitrary and capricious for State Farm to refuse to tender any amount at all. See 15 Louisiana Civil Law Treatise: Insurance Law and Practice, supra; McDill v. Utica Mut. Ins. Co., 475 So.2d 1085 (La.1985).
State Farm's fourth argument on appeal is that the trial court erred by granting Mr. Malloy's motion in limine as to two areas of evidence.
First, the trial court excluded some of Mr. Malloy's medical records (unrelated to the accident) because they contained references to substance abuse and would have been prejudicial to Mr. Malloy. State Farm complains that the records were relevant to show that Mr. Malloy had suffered injuries prior to the accident at issue in this case. However, the trial court did not exclude all the records of prior injury but, instead, excluded only those records that might be prejudicial. Also, State Farm cross-examined Mr. Malloy in detail as to his prior injuries so *102 the jury was fully informed as to them. Further, the present case focuses to a substantial degree on a head injury and the prior injuries were not to the head. The trial court was within the range of its discretion in excluding some of the medical records on the ground that their probative value (i.e. what they would add to the other medical records and the cross-examination) was outweighed by the risk of prejudice they presented. La. Code Evid. art. 403.
Further, based upon the record, it could not be contested that Mr. Malloy suffered some injury in the accident at issue. And, as State Farm has not appealed the quantum of damages, the severity of Mr. Malloy's injuries from the accident is not at issue on appeal. Thus, if the trial court did err in excluding some of the medical records, the error was harmless or at least of little consequence.
State Farm also asserts that Mr. Malloy's past history of substance abuse was relevant to show that he had a motive to exaggerate his injuries in order to obtain prescription drugs. There is nothing in the record to support this theory. The trial court certainly was within its range of discretion in excluding as prejudicial the medical records of substance abuse despite this theory of State Farm. La.Code Evid. art. 403.
State Farm also asserts that the trial court erred by excluding evidence of a conviction of Mr. Malloy for distributing marijuana because this conviction could be used for impeachment. La.Code Evid. at 609. However, Mr. Malloy pled guilty under La. R.S. 40:983 and, upon fulfillment of certain conditions, was discharged. His discharge was thus "without court adjudication of guilt and shall not be deemed a conviction for purposes of disqualifications and disabilities imposed by law upon conviction of a crime." La.R.S. 40:983.D. Thus, Mr. Malloy may not be impeached with the conviction at issue. State v. Rabbas, 278 So.2d 45 (La.1973) (discussing former La.R.S. 15:495).
State Farm's fifth argument on appeal is that the trial court erred by directing a verdict as to Mr. Vanwinkle's negligence. Mr. Vanwinkle was the driver, he had been drinking, the accident was a one-car accident in which he hit a tree and there was no evidence that anything occurred that would cause him to hit a tree other than lack of care on his part. Mr. Vanwinkle's negligence is obvious.
State Farm asserts that the jury could have found Mr. Malloy 100% comparatively at fault and, thus, found Mr. Vanwinkle 0% at fault. We have discussed and rejected this point above in connection with State Farm's third argument. State Farm did have a right to have the issue of Mr. Malloy's comparative fault submitted to the jury but this was done and the jury found Mr. Malloy 30% at fault.
State Farm's sixth argument on appeal is that the trial court erred by allowing Mr. Malloy's counsel to argue to the jury that Mr. Malloy's damages were more than $50,000. The remand from federal court had been based on a stipulation that not more than $50,000 was in controversy. The trial court ruled that, because of the stipulation, it would not enter a judgment of more than $50,000 regardless of the amount of the jury verdict, but that counsel could argue quantum of damages to the jury in terms of more than $50,000. We believe that the trial court's ruling was correct.
Because of the stipulation, Mr. Malloy could not recover, and State Farm could not be held liable for, more than $50,000. However, the recovery of Mr. Malloy, and the liability of State Farm, are determined, not by the jury verdict, but by the judgment entered by the trial court. The jury determines the facts and then the trial court entered the judgment in light of both the jury's determination of the facts and the law. The jury's fact finding role was to determine the actual amount of Mr. Malloy's damages, without regard to legal limits on Mr. Malloy's recovery or State Farm's liability. The trial court's role was to enter judgment in accordance with, not only the jury's verdict, but also the legal limits of Mr. Malloy's recovery and State Farm's liability.
As it was the jury's fact-finding role to determine the actual amount of Mr. Malloy's damages, it was perfectly proper for the *103 factual arguments of counsel, directed to the jury, to be couched in terms of Mr. Malloy's actual damages without regard to the legal limits to Mr. Malloy's recovery or State Farm's liability.
Mr. Malloy argues that the jury erred by finding him 30% comparatively at fault. Presumably, this was because Mr. Malloy decided to ride with Mr. Vanwinkle after Mr. Vanwinkle had been drinking. Mr. Malloy argues that there was no evidence that he should have been aware that Mr. Vanwinkle was impaired. However, Mr. Malloy himself testified to having seen Mr. Vanwinkle drink prior to driving. Also, the Mississippi police officer who investigated the accident testified by deposition that it appeared that Mr. Vanwinkle had been drinking. The police officer did not see Mr. Vanwinkle before or at the time he started to drive. However, as Mr. Malloy did not see Mr. Vanwinkle drink during the trip, Mr. Vanwinkle must have been as the officer observed him even prior to beginning to drive. Reasonable minds could differ as to the inferences to be drawn from this evidence as to what Mr. Malloy should have observed of Mr. Vanwinkle's condition. Thus, the jury's decision was not clearly wrong or manifestly erroneous.
The trial court awarded Mr. Malloy $5,000 in attorney's fees and he argues that this was inadequate. The trial court was, of course, in the best position to see the amount of effort required by Mr. Malloy's counsel. Based upon the record we believe that the trial court's determination of the amount of attorney's fees was not unreasonable.
Mr. Malloy also seeks additional attorney's fees for his counsel's opposition to State Farm's appeal. That is proper. Burst v. Western Fidelity Ins. Co., 561 So.2d 980, 984 (La.App. 4th Cir.), writ denied, 566 So.2d 986 (La.1990). Based upon the briefs and the record we believe a reasonable amount of such additional attorney's fees is $1,500.
For the foregoing reasons, the judgment of the trial court is affirmed with the additionally attorney's fees referred to above.
AFFIRMED.
CIACCIO, J., dissents with reasons.
CIACCIO, Judge, dissenting with reasons.
I disagree with the majority's conclusion with regard to the proof of insurance coverage in this case. My review of the record reveals insufficient evidence to show that State Farm provided a policy of insurance to plaintiff's parents which covered plaintiff for this accident.
There is no dispute that the insurance policy was not entered into evidence in this case. The majority notes that the record contains a State Farm automobile insurance policy renewal notice issued to plaintiff's parents, and thus concludes that the Malloys had State Farm insurance. However, this notice, which was issued to Rae B. and Ronald Malloy, does not constitute adequate proof of insurance coverage in this case. The notice does not contain the terms or conditions of the subject policy and does not provide any evidence to show that Mark Malloy was covered under the policy for this accident.
The law is well established that plaintiff has the burden of proving each essential element of his case, and competent evidence of plaintiff's claim under an insurance contract is the insurance contract itself. Brown v. Trinity Insurance Company, 480 So.2d 919, 920 (La.App. 2nd Cir.1985); Holland v. Aetna Life & Cas. Ins. Co., 385 So.2d 316, 317 (La.App. 1st Cir.1980).
The majority resolves the issue of lack of evidence of the insurance policy by holding that State Farm is precluded from raising an issue on appeal when it was not raised in the pre-trial order. However, although the pre-trial order may be used to narrow the issues for trial, the record in the present case contains no evidence of any agreement between the parties which disposes of the issue of coverage prior to trial. In fact, the answer filed by State Farm to plaintiff's claim for damages denies the allegations alleging insurance coverage for Mark Malloy, "except to admit that ... there was in existence a policy of insurance which is the best evidence of its contents, terms and limitations." Thus, *104 while State Farm admitted the existence of a policy in this case, State Farm never admitted or conceded that plaintiff was covered under the subject policy. Plaintiff still maintained the burden of proving insurance coverage for Mark Malloy who was not a named insured.
In order to prove coverage for his injuries plaintiff had to prove:
(1) The policy contained an omnibus clause covering him although he was not a named insured, and
(2) If the omnibus clause covered him as a member of his parents' household, he had to prove that he resided with his parents.
The only proof offered by plaintiff was his own self-serving testimony that he resided with his parents and that State Farm had issued a policy of insurance to his parents which provided coverage for him. Plaintiff's assertion that the policy provided UM coverage to him has no probative value. It is his opinion of the legal effect of policy language that was not in evidence. It presupposes the existence of an omnibus clause covering plaintiff as a member of his parents' household.
At the time of the accident, plaintiff was 23 years old. Plaintiff did not subpoena his parents to testify nor did they testify at trial. It strains the imagination to believe that plaintiff's parents would not have testified on his behalf if their testimony would have been in his favor. Their unexplained absence raises the presumption that their testimony would have been adverse to the plaintiff, i.e., that he was not residing with them. Accordingly, plaintiff failed to prove the existence of an omnibus clause or to prove that he was covered if such a clause was in the policy.
Thus, for the reasons stated, I find that plaintiff failed to meet his burden of proving insurance coverage in this case, and absent adequate proof of coverage, there can be no judgment against the insurance company in plaintiff's favor. I would therefore reverse the judgment of the trial court.