642 So.2d 1312 (1994)
NEW ORLEANS PROPERTY DEVELOPMENT, LTD., A Louisiana Partnership in Commendam
v.
AETNA CASUALTY AND SURETY COMPANY.
No. 93 CA 0692.
Court of Appeal of Louisiana, First Circuit.
April 8, 1994.
Opinion on Grant of Rehearing July 12, 1994.
*1313 Kathryn Wyble, Baton Rouge, for plaintiff-appellee New Orleans Property Development, Ltd.
Lawrence J. Boasso, Metairie, for defendant-appellant Aetna Cas. and Sur. Co.
Before CARTER, GONZALES and WHIPPLE, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment in favor of plaintiff following the granting of plaintiff's motion for directed verdict.

FACTS
In early 1986, Bob Wright, managing partner of New Orleans Property Development Partnership (plaintiff), was contacted by an independent insurance agent and personal friend, Leon C. Moncla d/b/a Leon C. Moncla Insurance Agency (the Moncla Agency), regarding the purchase of insurance coverage on property owned by plaintiff. Bob Wright reached an agreement with the Moncla Agency for four policies of insurance coverage, including a worker's compensation policy, a multi-peril property policy, a garage policy, and an umbrella policy. All of the policies were issued by Aetna Casualty and Surety Company (Aetna).[1] Plaintiff paid the Moncla Agency a down payment of $20,000.00 for the premiums, and the Moncla Agency arranged for plaintiff to finance the remaining premiums through Breaux Bridge Bank and Trust Company (Breaux Bridge Bank). On February 25, 1986, plaintiff executed a promissory note to Breaux Bridge Bank in the amount of $176,338.00, with Bob Wright and Leon Moncla signing the note as guarantors.
The loan proceeds were then paid to the Moncla Agency who in turn paid Aetna for plaintiff's insurance premiums. Each policy issued by Aetna had a policy period from February 10, 1986, through February 10, 1987.
On May 16, 1986, Aetna received a cancellation request from plaintiff, requesting that its umbrella policy be canceled. On June 11, 1986, Aetna determined that, based on the cancellation of the umbrella policy, plaintiff was due a return premium in the amount of $16,072.00.
On March 27, 1986, Aetna issued a change endorsement on the multi-peril policy because of a building limit decrease. The premium, which was originally $157,191.00, was decreased to $127,569.00. Thus, assuming, plaintiff had paid the original premium of $157,191.00, plaintiff would have been due a return premium in the amount of $29,622.00. On June 26, 1986, plaintiff's original multi-peril policy was canceled flat, meaning that it was canceled with no earned premium. Plaintiff was then issued a replacement policy with a new premium of $79,207.00.
*1314 It is undisputed that Aetna did not refund the return premiums directly to plaintiff. Rather, in July of 1986, Aetna followed its customary practice and merely credited the Moncla Agency's account for $157,191.00, representing the flat cancellation of plaintiff's multi-peril policy. There was no credit, however, for the cancellation of the umbrella policy. Aetna debited the Moncla Agency's account for the change endorsement on the multi-peril policy ($29,622.00) and for the multi-peril replacement policy ($79,207.00).
After receiving the credit from Aetna, the Moncla Agency did not refund the premiums to plaintiff. In 1987, Leon C. Moncla filed for bankruptcy, listing neither plaintiff nor Aetna as creditors.[2] On May 17, 1988, plaintiff instituted this suit against Aetna, alleging that Aetna failed to refund the return premiums to them.
On June 28, 1988, Aetna filed a peremptory exception pleading the objection of non-joinder of an indispensable party and a dilatory exception pleading the objection of non-joinder of a necessary party. On September 2, 1988, a hearing was held on the exceptions, wherein the trial court overruled both exceptions. On September 12, 1988, the trial court signed a judgment in accordance with that ruling.
On September 23, 1988, Aetna filed an answer and third party demand against the Moncla Agency, alleging that:
(a) if Aetna is found to be liable to plaintiff, then Aetna is entitled to full indemnity and/or contribution from the Moncla Agency; and
(b) alternatively, that the Moncla Agency is liable to Aetna in the amount of $96,137.98 based on the agency's intentional conversion of the funds.
On March 15, 1990, plaintiff filed a motion for summary judgment, alleging that there was no genuine issue of material fact in dispute and that it was entitled to judgment as a matter of law. On May 11, 1990, a hearing was held on the motion for summary judgment, and the trial court denied the motion. On July 2, 1992, plaintiff filed a motion for partial summary judgment on the issue of liability. On October 2, 1992, the trial court denied the motion for partial summary judgment.
On December 14 and 15, 1992, the matter went to trial before a jury. On December 15, 1992, the trial court granted plaintiff's motion for directed verdict. On January 7, 1993, the trial court signed a judgment in accordance with that ruling, awarding plaintiff $93,191.00, plus interest at the rate of one and one-half percent per month from December 12, 1987, until paid and costs.[3] Aetna appealed from this adverse judgment, assigning the following specifications of error:
1. The trial court erred in granting a directed verdict and entering a verdict in favor of plaintiff.
2. The trial court erred in determining that plaintiff did not actually or constructively receive the refund premium due when plaintiff expressly authorized Leon C. Moncla Agency to retain the refunds due on its behalf and pay off a joint debt owed by Leon C. Moncla and New Orleans Property Development.
3. The trial court erred in determining the amount of refund premiums due at $93,191.00 when the preponderance of the evidence shows the actual amount of any refund was $64,434.00.
4. The trial court erred in assessing interest at a rate of 1½% per month.
Plaintiff answered the appeal, requesting frivolous appeal damages.

DIRECTED VERDICT
Aetna contends that the trial court erred in granting plaintiff's motion for a directed verdict.
LSA-C.C.P. art. 1810 provides as follows:

*1315 A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict that is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.
A trial judge has much discretion in determining whether or not to grant a motion for directed verdict. Barnes v. Thames, 578 So.2d 1155, 1162 (La.App. 1st Cir.), writ denied, 577 So.2d 1009 (La.1991). A motion for directed verdict is appropriately granted in a jury trial when, after considering all evidentiary inferences in the light most favorable to the movant's opponent, it is clear that the facts and inferences are so overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict. Adams v. Travelers Insurance Company, 589 So.2d 605, 608 (La.App. 2nd Cir.1991); Barnes v. Thames, 578 So.2d at 1162. However, if there is substantial evidence opposed to the motion, i.e., evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury. Adams v. Travelers Insurance Company, 589 So.2d at 608.
On appeal, the standard of review for directed verdicts is whether, viewing the evidence submitted, the appellate court concludes that reasonable people could not reach a contrary verdict. Bergeron v. Blake Drilling & Workover Company, Inc., 599 So.2d 827, 849 (La.App. 1st Cir.), writs denied, 605 So.2d 1117, 1119 (La.1992); Cliburn v. Colonial Penn Insurance Company, 583 So.2d 103, 105 (La.App. 3rd Cir.1991). It is axiomatic that the propriety of a directed verdict must be evaluated in light of the substantive law underpinning the plaintiff's claims. Adams v. Travelers Insurance Company, 589 So.2d at 608.
It is well settled in Louisiana that an insurance policy is a contract, and rules governing interpretation of written agreements apply to insurance contracts. Thibodeaux v. Doe, 602 So.2d 1076, 1078 (La.App. 1st Cir.), writ denied, 605 So.2d 1377 (La. 1992). An insurance contract is the law between the parties, and every provision therein must be construed as written. Massachusetts Mutual Life Insurance Company v. Nails, 549 So.2d 826, 832 (La.1989); Barnes v. Allstate Insurance Company, 608 So.2d 1045, 1046-47 (La.App. 1st Cir.1992); Thibodeaux v. Doe, 602 So.2d at 1078. If the wording of the insurance contract is clear and expresses the parties' intent, the agreement must be enforced as written. The court should not strain to find ambiguity where none exists. Strickland v. State Farm Insurance Companies, 607 So.2d 769, 772 (La.App. 1st Cir.1992). Whether a contract is ambiguous is a question of law. Strickland v. State Farm Insurance Companies, 607 So.2d at 772.
In the instant case, Form MP-0090 (7/77) was attached to the declarations page of the multi-peril policy originally issued by Aetna to plaintiff. In the section entitled, "Conditions Applicable to Section II," the policy provided, in pertinent part, as follows:
2. Premium. Premium designated in this policy as `advance premium' is a deposit premium only which shall be credited to the amount of the earned premium due at the end of the policy period. At the close of each period (or part thereof terminating with the end of the policy period) designated in the Declarations as the audit period the earned premium shall be computed for such period and, upon notice thereof to the named insured shall become due and payable. If the total earned premium for the policy period is less than the premium previously paid, the Company [Aetna] shall return to the named insured [plaintiff] the unearned *1316 portion paid by the named insured. (Underlining ours).[4]
The applicable statutory law has the same requirement. LSA-R.S. 22:637 B provides that "the insurer shall pay to the insured or to the person entitled thereto as shown by the insurer's records, any unearned portion of any premium paid on the policy...." The "person entitled thereto" is the insured in this case. Use of the mandatory term "shall" requires the insurer to make certain that the refund gets to the insured. David Briggs Enterprises, Inc. v. Britamco Underwriters, Inc., 596 So.2d 1306, 1307 (La.1992).
In failing to refund the unearned premiums to plaintiff, Aetna did not comply with the policy terms. However, at trial, Dennis Bothman and Richard Hyland, representatives of Aetna, explained that Aetna did not refund the unearned premiums to plaintiff because it was customary in the insurance business to simply credit the agency's account with the amount of the unearned premiums.
The Louisiana Supreme Court recently stated in David Briggs Enterprises, Inc. v. Britamco Underwriters, Inc., 596 So.2d at 1308, that "[c]ustom cannot overcome the contractual and statutory obligation to refund unearned premiums to the insured." The court, quoting the New Jersey Supreme Court in Spilka v. South America Managers, Inc., 54 N.J. 452, 255 A.2d 755 (1969), stated the following:
It is equally elementary that, upon cancellation of an insurance contract by either party to it, the obligation rests on the insurer to pay to the insured the unearned premium called for by the terms of the policy. That obligation is not met where the insurer pays its agent, intending transmittal to the insured, if the money does not ultimately reach the insured. If an insurer chooses to make such payment to someone other than the insured, it does so at its peril.
David Briggs Enterprises, Inc. v. Britamco Underwriters, Inc., 596 So.2d at 1308.
Although Aetna followed its customary practice in refunding these premiums, both LSA-R.S. 22:637 and Aetna's policies required refund of the unearned premiums to the named insured (plaintiff). Therefore, Aetna cannot be released from its responsibility to plaintiff.
After reviewing the record and the evidence submitted, we conclude that the facts and inferences are so overwhelmingly in favor of plaintiff that reasonable people could not reach a contrary verdict. Therefore, the trial court did not err in granting plaintiff's motion for directed verdict.

AMOUNT OF REFUND PREMIUMS DUE
Aetna contends that the trial court erred in determining that plaintiff was due a refund in the amount of $93,191.00 when the preponderance of the evidence showed that the refund should have been $64,434.00. We agree.
It was undisputed at trial that Aetna makes the determination of the amount to be refunded to an insured. Richard Hyland, Aetna's premium audit consultant, testified that plaintiff was due a refund in the amount of $64,434.00. Moreover, the record reveals that plaintiff was due a refund in the amount of $64,434.00. The premiums paid to Aetna on behalf of plaintiff were as follows:

Garage Policy $ 5,251.00
Worker's Compensation Policy 10,761.00
Umbrella policy 24,000.00
Multi-Peril Policy 127,569.00

Although the original premium for the multi-peril policy was $157,191.00, the evidence reveals that a change endorsement was issued and that the premium was reduced to $127,569.00. May Heatherly, an employee of the Moncla Agency, testified that the agency never paid Aetna the original premium due because it was aware that the change endorsement would soon become effective. Heatherly indicated that the Moncla Agency paid Aetna $127,569.00 for the premium due on the multi-peril policy. Moreover, *1317 Hyland testified that Aetna's accounting statement indicated that the Moncla Agency paid only $127,569.00 toward the premium. Therefore, the record does not support plaintiff's contention that the original premium of $157,191.00 was paid to Aetna.
Because the garage policy and the worker's compensation policies ran full term, there was no refund due on those policies. However, the umbrella policy was canceled mid-term, resulting in a return premium due in the amount of $16,072.00. The multi-peril policy was canceled flat, meaning that there was no earned premium, and was replaced by a policy with a premium in the amount of $79,207.00. Therefore, on the multi-peril policy, Aetna owed plaintiff a premium refund in the amount of $48,362.00 ($127,569.00 - $79,207.00).
It is clear that Aetna owed plaintiff premium refunds in the amount of $64,434.00 ($16,072.00 + $48,362.00). Therefore, the trial court erred in holding that plaintiff was entitled to a refund in the amount of $93,191.00. Accordingly, the part of the judgment awarding plaintiff $93,191.00 is set aside, and the judgment is amended to award plaintiff $64,434.00.

INTEREST
In its final assignment of error, Aetna contends that the trial court erred in assessing interest at the rate of 1½% per month. However, Aetna failed to brief the assignment of error, and it is, therefore, deemed abandoned. See Uniform Rules-Courts of Appeal, Rule 2-12.4.

FRIVOLOUS APPEAL
Plaintiff answered the appeal, requesting damages for frivolous appeal.
LSA-C.C.P. art. 2164 provides that an appellate court may award damages for frivolous appeal. However, the provisions of the article are penal in nature and must be strictly construed. Appeals are favored, and damages for frivolous appeal will not be awarded unless it appears that the appeal was taken solely for the purpose of delay or that appealing counsel does not seriously believe in the position he advocates. Louisiana National Bank of Baton Rouge v. Belello, 577 So.2d 1099, 1103 (La.App. 1st Cir.1991).
Because we have found merit to Aetna's third assignment of error, we conclude that damages for frivolous appeal are not warranted in the instant case.

CONCLUSION
For the foregoing reasons, that portion of the trial court judgment awarding plaintiff $93,191.00 is set aside, and the judgment is amended to award plaintiff $64,434.00. As amended, the judgment is affirmed. Costs of this appeal are assessed equally between plaintiff and Aetna.
AMENDED AND, AS AMENDED, AFFIRMED.

ON REHEARING
PER CURIAM.
In this application for rehearing, New Orleans Property Development, Inc. (NOPD) contends that a rehearing should be granted on the issue of the amount of premium refund due NOPD from Aetna Casualty and Surety Company (Aetna).
NOPD asserts that it made a $20,000.00 down payment to the Leon C. Moncla Insurance Agency (Moncla Agency) for insurance premiums and, with the assistance of Leon Moncla, financed the remaining $176,338.00 through Breaux Bridge Bank. Relying on LSA-R.S. 22:1118 E[1] and DeSoto Parish School Board v. Insurance Company of North America, 572 So.2d 310 (La.App. 2nd *1318 Cir.1990), writ denied, 575 So.2d 368 (La. 1991), for the proposition that payment of premiums to an insurance agency is considered payment to the insurance company, NOPD argues that receipt of loan proceeds of $176,338.00 by the Moncla Agency is equivalent to payment to Aetna, and, therefore, the premium refund should be based on the amount paid to the Moncla Agency ($196,338.00),[2] rather than on the amount the Moncla Agency paid Aetna ($167,581.00).
Upon further reflection on the entire record in this matter as well as the arguments presented in the application for rehearing, we agree. The trial court obviously determined that the trial testimony proved that the Moncla Agency received the total amount of NOPD's loan proceeds. As a reviewing court, to reverse a trial court's factual finding, we must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, we must do more than simply review the record for some evidence which supports or controverts the trial court's finding; we review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Stobart v. State, Department of Transportation and Development, 617 So.2d 880 (La.1993). The issue to be resolved is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882.
Therefore, based upon the record, we find that there is a reasonable basis in the record to substantiate NOPD's claim that it is entitled to a return premium in the amount of $93,191.00.
For the foregoing reasons, the application for rehearing is granted. The prior judgment of this court, amending the trial court judgment, is vacated and set aside, and the judgment of the trial court is affirmed in its entirety.
REHEARING GRANTED.
NOTES
[1] The original premiums on the policies were as follows:

Garage Policy $ 5,251.00
Multi-Peril Property Package 157,191.00
Umbrella Policy 24,000.00
Worker's Compensation Policy 10,761.00

[2] On October 25, 1988, a notice of automatic stay in Moncla's bankruptcy proceedings was filed in the trial court.
[3] On January 4, 1993, plaintiff filed a motion to tax costs. On March 16, 1993, the trial court granted the motion and entered judgment in plaintiff's favor for the full costs of the proceedings, including $2,400.00 for expert witness fees and $73.50 for copies utilized at trial.
[4] Upon cancellation of the original multi-peril policy, Aetna issued a replacement policy. The declarations page of the replacement policy expressly provides that form MP-0090 (7/77) is a part of that policy. The policy defines "named insured" as "the person or organization named in Item 1. of the declarations of this policy." A review of the declarations pages of the two policies which were canceled by Aetna reveals that the named insured is plaintiff.
[1] LSA-R.S. 22:1118 E, formerly LSA-R.S. 22:1180, provides as follows:

(1) Any insurer which issues or delivers a policy or contract of insurance pursuant to the application or request of an agent or broker who is not authorized to represent said insured as an agent shall be deemed to have authorized such agent or broker to act on insurer's behalf as payment of any premium on such policy or contract of insurance. The payment to an agent or broker shall be payment to the insurer with all resultant obligations and duties.
(2) This Subsection establishes any agency relationship only for the matter of collection of premiums specifically referred to herein.
[2] The $196,338.00 represents payment of a $20,000.00 down payment plus loan proceeds of $176,338.00.