691 So.2d 208 (1997)
NEWPARK RESOURCES, INC. and Newpark Wellhead Services, Inc.
v.
MARSH & McLENNAN OF LOUISIANA, INC.
No. 96 CA 0935.
Court of Appeal of Louisiana, First Circuit.
February 14, 1997.
Writ Denied April 25, 1997.
*209 Margaret M. Sledge, New Orleans, for Plaintiffs-Appellants.
William Ellison, New Orleans, for Defendant-Appellee.
Before LOTTINGER, C.J., and FOIL and FOGG, JJ.
FOGG, Judge.
By this suit, plaintiffs seek to recover damages arising out of defendant's alleged breach of contractual and fiduciary duties in failing to have one of plaintiffs' subsidiaries listed as a named insured on a blanket crime policy issued by Aetna Casualty and Surety Company. The trial court granted defendant's Motion for Directed Verdict and plaintiffs appeal. We affirm.
The relevant facts of this case span a period of over fifteen years. In 1981 and currently, Newpark Resources, Inc. was and is a holding company for several subsidiary companies, which do business in the oil industry.
In 1981, one of the subsidiaries owned by Newpark Resources, Aztec Corporation,[1] had in its employ a salesman named Ken Chalaire. Tubular Steel, Inc., a customer of Aztec, claimed that Ken Chalaire obligated Aztec to deliver a certain type of pipe to Tubular Steel. After the agreement was reached, Chalaire informed Tubular that Aztec would not be able to fill the order from its own stock. However, Chalaire volunteered that the order could be filled by Labouve Drilling Company. Pursuant to Chalaire's instructions, Tubular wired the agreed upon purchase price to James Labouve.
Unfortunately, the pipe delivered was not of the type and quality required by Tubular. Shortly after this discovery, Tubular made a *210 demand on Aztec for return of the purchase price. The matter was not amicably settled and litigation ensued. In relevant part, Tubular alleged in its original petition, filed 1982, that Ken Chalaire was an agent of Aztec at all times relevant to the litigation; as soon as Tubular discovered that the pipe was not satisfactory an oral request was made of Ken Chalaire to remove the pipe and return the purchase price; that Aztec violated the Texas Deceptive Trade Practices Act by engaging in false, misleading, or deceptive acts and practices in the conduct of its business with Tubular; that Aztec, by and through Ken Chalaire, caused confusion and misunderstanding as to the source of the goods and that the conduct described was committed knowingly, as agents were actually aware of the acts constituting the breach of warranty described.
In June of 1986, Tubular filed a First Amended Original Petition alleging that Ken Chalaire's representations to Tubular were knowingly false when made or were made with reckless disregard as to their truth or falsity and these actions constituted fraud.
A jury in Texas found that Ken Chalaire was acting as an agent of Aztec; that a contract was entered into; that Aztec made false representation to Tubular; and that Tubular relied on Aztec's false representations to its detriment. The judgment of the trial court was affirmed by a Texas appeals court.
Newpark Resources and its named subsidiaries had comprehensive crime policies in place when the above stated facts occurred. Those policies were issued by the Insurance Company of North America (INA) and were in effect from January 1, 1977, until January 1, 1985, at which time INA canceled the policies.
Newpark Resources contacted Marsh & McLennan to procure a replacement comprehensive crime policy covering Newpark Resources and its operating subsidiaries. Marsh & McLennan procured a blanket crime policy, issued by Aetna Casualty & Surety Company, effective January 1, 1985. This policy was canceled by Aetna on June 21, 1986. The omnibus endorsement contained in the Aetna policy covered "any interest hereafter owned, controlled or operated by any one or more of those named as Insured,..."
After the judgment of the Texas trial court was rendered, Newpark Resources submitted a claim to Aetna, which denied the claim. Aetna filed an objection of no right of action claiming Aztec was not a named insured. That exception was sustained and the trial court dismissed Newpark Resources' claim.
Newpark Resources then filed the current lawsuit against Marsh & McLennan claiming that, although Newpark Resources instructed Marsh & McLennan to include its subsidiaries in the policy, the defendant failed to do so. A jury trial was held and, at the close of plaintiffs' case, defendant moved for a directed verdict which was granted by the trial court. Plaintiffs appeal, presenting four assignments of error. We affirm the judgment of the trial court, however, for different reasons.
Initially on appeal, plaintiffs contend that the trial court erred in granting a directed verdict in favor of the Marsh & McLennan. LSA-C.C.P. art. 1810, which governs directed verdicts, states as follows:
A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict that is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.
A trial court has much discretion in determining whether or not to grant a motion for directed verdict. New Orleans Property Development, Ltd. v. Aetna Casualty and Surety Company, 93-0692 (La.App. 1 Cir. 4/8/94); 642 So.2d 1312; Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544 and 92-1545 (La.App. 1 Cir. 3/11/94); 634 So.2d 466, 478, writ denied, 94-0906 (La.6/17/94); 638 *211 So.2d 1094; Barnes v. Thames, 578 So.2d 1155 (La.App. 1 Cir.), writ denied, 577 So.2d 1009 (La.1991). A motion for directed verdict is appropriately granted in a jury trial when, after considering all evidentiary inferences in the light most favorable to the movant's opponent, it is clear that the facts and inferences are so overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict. New Orleans Property Development, Ltd., 642 So.2d at 1315; Belle Pass Terminal, Inc., 634 So.2d at 478; Barnes, 578 So.2d at 1162. However, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury. New Orleans Property Development, Ltd., 642 So.2d at 1315; Belle Pass Terminal, Inc., 634 So.2d at 478.
On appeal, the standard of review for directed verdicts is whether, viewing the evidence submitted, the appellate court concludes that reasonable people could not reach a contrary verdict. New Orleans Property Development, Ltd., 642 So.2d at 1315; Belle Pass Terminal, Inc., 634 So.2d at 478. Furthermore, the propriety of a directed verdict must be evaluated in light of the substantive law underpinning the plaintiff's claims. New Orleans Property Development, Ltd., 642 So.2d at 1315; Belle Pass Terminal, Inc., 634 So.2d at 478.
Appellants claim that the trial court erred in admitting into evidence two letters that were not properly authenticated. We agree. The letters complained of were unsigned documents, not on letterhead, purporting to be letters written by Paxton Lowery, Aztec's attorney in the Tubular litigation. These letters were produced by appellants in response to Marsh & McLennan's request for production of documents during discovery in this matter. Appellants, however, had custody of these letters because they received them from Aetna during discovery in its lawsuit against Aetna. The letters were obtained by Aetna in 1986 when Aetna reviewed Mr. Lowery's files in connection with plaintiffs' claim for coverage under the Aetna policy.
Appellees questioned Karyn Roach O'Bryan, who was Newpark Resources' risk manager from 1978 to 1988, about the letters. She testified that she did not recall having seen the letters. The trial court apparently admitted the letters because they were produced by appellants pursuant to a discovery request. We find this is an error in this case. LSA-C.E. art. 901 provides that authentication of evidence is a condition precedent to admissibility. The letters at issue could not be authenticated and they were not self-authenticating. Authentication is the process whereby something is shown to be what it purports to be. Malloy v. Vanwinkle, 94-2060 (La.App. 4 Cir. 9/28/95); 662 So.2d 96. Neither Mr. Lowery nor the recipient of the letters was called to testify. Accordingly, appellees failed to lay a proper foundation for admission of a business record and the trial court erred in admitting them into evidence.
However, we find that the trial judge was correct in his oral reasons for judgment when he opined that, if Newpark Resources had knowledge sufficient to put them on notice of a claim during the INA policy, there is no liability on Marsh & McLennan. The trial court ruled and we agree, that there must be a loss under a breach of contract before you can recover. Cahoon v. USAA Cas. Ins. Co., 95-395 (La. App. 5 Cir. 10/31/95); 663 So.2d 534, writ denied, 95-3020 (La.2/9/96); 667 So.2d 540; Achord v. Smith, 451 So.2d 1315 (La.App. 1 Cir.1984). The trial court relied heavily on the letters discussed above in his oral reasons for granting the directed verdict. Although we find these letters should not have been admitted, we find it is harmless error because we have determined that there is other evidence properly in evidence which is sufficient to grant the directed verdict.
Both the INA and the Aetna policies were comprehensive blanket crime policies. Both were "claims made" rather than "occurrence" policies. Under claims made policies, the mere fact that an insured loss-causing event occurs during the policy period is not sufficient to trigger insurance coverage of the *212 loss. Such policies also typically require the insured to give prompt notice to the insurer of any claims asserted against the insured, as well as of any occurrences that have caused or will potentially cause an insured loss. The notice requirements in claims made policies allow the insurer to "close its books" on a policy at its expiration and thus to attain a level of predictability unattainable under standard occurrence policies. F.D.I.C. v. Mijalis, 15 F.3d 1314 (5 Cir.1994). For example, if an employee's fraudulent or dishonest act occurs during the period of one policy, the loss will not be covered by that policy unless it is discovered within one year of the end of that policy period. If a loss is not discovered within one year of the policy period, the loss will be covered by the subsequent policy.
In the instant case, if Newpark Resources discovered the loss prior to January 1, 1986 (one year after the expiration of the INA policy), then the loss would be covered by INA. If, however, the loss was discovered between January 1, 1986 and one year after the expiration of the Aetna policy, then Aetna's policy would provide coverage.
Appellants assert that Section I of Aetna's policy restricts Aetna's duty to indemnify Newpark Resources until the insured sustains a loss. Section I of Aetna's policy states in part:
to indemnify the Insured for ... Loss of Money ... and other property which the Insured shall sustain resulting directly from one or more fraudulent or dishonest acts committed by an Employee....
Appellants also attempt to read the notice section of the policy in a very restrictive manner. The pertinent section reads in part:
Upon knowledge or discovery of loss or of an occurrence which may give rise to a claim for loss, the Insured shall ... give notice thereof as soon as practicable.
Appellants argue that a discovered loss means more than an occurrence which may give rise to a claim for loss. Newpark Resources avers that it did not truly discover its loss until the trial court rendered a final judgment; it was at that time it sustained a loss, and only then was the notice requirement effective. Alternatively, Newpark Resources asserts that the first conceivable notice it received was when the first amended petition was filed by Tubular. Karyn Roach O'Bryan, the risk manager for Newpark Resources at the time of the occurrence, testified that she was of the opinion the first petition from Tubular did not provide them with notice of a possible claim because only Aztec was named in the petition. She claims that it was not until the first amending petition was filed, naming Ken Chalaire individually, that they had notice. We disagree.
The original petition states in pertinent part:
II
On November 11, 1981, Plaintiff, acting by and through its duly authorized agent, executed and delivered to AZTEC a purchase order offering to buy pipe from AZTEC. Such offer was orally accepted by AZTEC's agent Ken Chalaire....
....
V.
Following Defendants' breach of contract, Plaintiff's agent requested Defendants to remove the goods and return the money Plaintiff had paid under the contract. Pursuant to § 2.602 of the Texas Business & Commerce Code, Plaintiff duly notified both Defendants of the rejection of goods by oral notification on or about November 25, 1981 to Ken Chalaire, agent of AZTEC....
....
XII.
Furthermore, Plaintiff would show that Defendants have violated the Texas Deceptive Trade Practices Act by engaging in false, misleading, or deceptive acts and practices in the conduct of their business with Plaintiff. Defendants, by and through their agent Ken Chalaire, caused confusion and misunderstanding as to the source of the goods Defendants were to provide.
Appellants cite FDIC v. Fidelity & Deposit Co. of Maryland, 45 F.3d 969, 974 (5 Cir. *213 1995) for the proposition that discovery of a loss, for purposes of coverage under a blanket bond, requires that the insured have more than mere suspicion of loss. We agree, but do not find their reliance on that case helpful to their cause. We find that the filing of a petition by Tubular went beyond "mere suspicion." Our finding is supported by MGIC Indem. Corp. v. Central Bank of Monroe, La., 838 F.2d 1382, 1388 (5 Cir. 1988). That case dealt with a directors and officers insurance policy. Therein, the defendant argued that it decided to make a claim only after a final judgment was rendered. The court stated that a claim is indisputably made by an outside party filing suit on a demand, resulting from an act of the officer or director. The defendant argued that if the outside party does not name a director or officer but sues only the bank directly, no claim is made until the bank decides to make demand on its own director or officer for indemnity by filing an insurance claim. The court stated this argument would render the notice provision nonsensical. See also F.D.I.C. v. Mijalis, 15 F.3d at 1331.
We agree and find that the wording of the original petition filed by Tubular was sufficient to put Aztec and its holding company, Newpark Resources, on notice of a claim. The petition named Ken Chalaire by name and identified the actions taken by him in the matter at issue. Further, the final judgment found "false representation" which is very close to the wording found in the original petition, it did not find "fraud" as was alleged in the first amending petition. Therefore, with the filing of the lawsuit, Newpark Resources discovered a claim based on the actions of one of its employees and should have notified its insurance carrier at or near that time. The petition was specific in that it named Ken Chalaire as the individual who initiated the action complained of. Accordingly, we find that the facts of this case are overwhelmingly in favor of the moving party and that reasonable men could not arrive at a contrary verdict.
Appellant also asserts that the trial court was incorrect in holding that "under a claims made policy ... an insured's claim can only be covered by one insurance policy; and I think this is true with regard to the INA and Aetna policies." Appellants then present cases wherein the court found that coverage was provided at the same time by two overlapping policies. In those cases, the court found that the respective insurance companies would be required to pay their pro rata share of the loss. See for instance, Guidry v. CSI Blasters/Painters, Inc., 724 F.Supp. 435 (W.D.La.1989), aff'd, 921 F.2d 27 (5 Cir. 1990). However, the cases cited by appellants are inapplicable to the instant case. Here, the issue is discovery and notice of a loss that triggers coverage. The claim could not be discovered twice. Once the potential loss was discovered during the INA policy period, it could not then be discovered again during the Aetna policy period. The fact that Newpark Resources did not notify Aetna until a final judgment was rendered does not mean that was when the loss was discovered. As discussed previously, once a lawsuit was filed by an outside party, a claim had been sufficiently made and Newpark Resources should have notified the insurance carrier that was providing coverage during that period of time, in this case, INA.
For the foregoing reasons, we affirm the judgment of the trial court. The costs of this appeal are assessed against the appellants.
AFFIRMED.
NOTES
[1] Aztec Corporation first changed its name to Newpark Pipe and Supply and, then, to Newpark Wellhead Services, Inc.