# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 13-1370 consolidated with CW 13-1422

**HAZEL RICHARD SAVOIE, ET AL.**

**VERSUS**

**ALICE T. RICHARD, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 10-18078
HONORABLE PENELOPE QUINN RICHARD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLY HOWARD EZELL**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Billy Howard Ezell, and Phyllis M. Keaty, Judges.

**AFFIRMED AS AMENDED.**

**Donald T. Carmouche**
**Victor L. Marcello**
**Diane Adele Owen**
**John Hogarth Carmouche**
**William R. Coenen, III**
**Brian T. Carmouche**
**Ross J. Donnes**
**Todd J. Wimberley**
**Talbot, Carmouche & Marcello**
**17405 Perkins Road**
**Baton Rouge, LA 70810**
**(225) 400-9991**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
 **Hazel Richard Savoie**
 **Richard Michael Savoie**
 **Kevin Troy Savoie**

**Thomas E. Balhoff**
**Judith R.E. Atkinson**
**Carlton Jones, III**
**Roedel Parsons Koch Blache Balhoff & McCollister**
**8440 Jefferson Hwy., Ste. 301**
**Baton Rouge, LA 70809-7652**
**(225) 929-7033**
**COUNSEL FOR DEFENDANT/APPELLEE:**
 **State of Louisiana, Department of Natural Resources**

**Patrick Wise Gray**
**Thomas Martin McNamara**
**Amy Allums Lee**
**Johnson Gray McNamara, LLC**
**P. O. Box 51165**
**Lafayette, LA 70505**
**(337) 412-6003**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
 **SWEPI LP**
 **Shell Oil Company**

**Joe Barrelle Norman**
**Kelly B. Becker**
**Liskow & Lewis**
**701 Poydras St., Ste. 5000**
**New Orleans, LA 70139-5099**
**(504) 581-7979**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
 **Shell Oil Company**
 **SWEPI LP**

William T. McCall
Guillory & McCall
901 Lake Shore Drive, Ste. 1030
Lake Charles, LA 70601
(337) 433-9996
COUNSEL FOR DEFENDANTS/APPELLANTS:
    Shell Oil Company
    SWEPI LP

Michael Keith Prudhomme
David Paul Bruchhaus
Chad Ellis Mudd
Mudd & Bruchhaus, LLC
410 E. College Street
Lake Charles, LA 70605
(337) 562-2327
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Richard Michael Savoie
    Hazel Richard Savoie
    Kevin Troy Savoie

Richard G. Duplantier, Jr.
Cheri Chestnut
Galloway Johnson Tompkins Burr & Smith
701 Poydras Street, 40th Floor
New Orleans, LA 70139
(504) 525-6802
COUNSEL FOR DEFENDANTS/APPELLEE:
    Pioneer Exploration, et al.

Michael J. Mazzone
Elizabeth E. Klingensmith
Haynes and Boone, LLP
1221 McKinney St., Ste. 2100
Houston, TX 77010-2007
(713) 547-2115
COUNSEL FOR DEFENDANTS/APPELLANTS:
    Shell Oil Company
    SWEPI LP

**EZELL, Judge.**

Shell Oil Company and SWEPI LP (hereinafter collectively referred to as "Shell") appeal the judgment of the trial court awarding Hazel, Kevin, and Richard Savoie (the Savoies) $34 million in damages for remediation of their land to state regulations and $18 million to remediate the property to comply with mineral leases entered into by the parties. The Savoies answer, claiming the trial court improperly awarded judicial interest from the date of judicial demand. For the following reasons, we hereby affirm the decision of the trial court as amended.

This is an oilfield remediation case. The Savoies sued numerous defendants for allegedly contaminating their property through mineral exploration and production activities. After a month-long trial on the matter, a jury found that the Savoies had suffered environmental damage to their property and that Shell was responsible. The jury awarded the plaintiffs $34 million for restoration of the property to state regulatory standards and awarded an additional $18 million for remediation of the property to the standards set forth in the mineral leases.

After the jury's verdict, the matter proceeded to the Louisiana Department of Natural Resources (DNR) in accordance with the provisions of La.R.S. 30:29, also known as Act 312. Pursuant to this statute, the DNR adopted a remediation plan which would cost $3,963,003.00 to implement. The trial court approved the DNR plan as the most feasible plan to remediate the land to state regulations when the Savoies failed to contest the plan at a preponderance hearing. The trial court entered judgment in favor of the Savoies for $34 million for remediation to state standards but required Shell to pay $3,963,003.00 of that amount into the court's registry for the exclusive use in remediation under La.R.S. 30:29. The remaining $30 million took the form of a personal judgment in favor of the Savoies. The trial

court further awarded the Savoies $18 million in damages to remediate the land to the standards set forth by the contracts between the parties that exceeded the state requirements. From this judgment, Shell appeals and the Savoies answer.

Shell asserts four assignments of error on appeal: that the trial court erred in failing to advise the jury of La.R.S. 30:29 in its jury charges; that the trial court erred in awarding the Savoies $30 million as a cash payment for regulatory cleanup; that the award of that $30 million in addition to the performance of the cleanup amounts to an impermissible double recovery; and that the trial court erred in denying its motion for directed verdict. Because Shell's second and third assignments of error overlap, we will address them together. The Savoies answer the appeal, claiming the trial court erred in awarding interest from the date of judicial demand rather than from the date of the breach of the leases at issue.

*Jury charges*

Shell asserts as its first assignment of error that the trial court erred in excluding reference to Act 312 during trial and in failing to inform the jury of the post-trial process set forth by the Act. For this alleged error, Shell seeks remand for a new trial. Shell alleges it was prejudiced by the Savoies' claims to the jury that they must be awarded as much as $35 million to insure remediation to state standards when the framework of the Act guaranteed that remediation to those standards would occur, regardless of cost, once findings of environmental damage and liability were made by the jury.

> Generally, "the giving of an allegedly erroneous jury instruction will not constitute grounds for reversal unless the instruction is erroneous and the complaining party has been injured or prejudiced thereby." *Rosell*, 549 So.2d at 849. In fact, Louisiana jurisprudence is well established that a reviewing court must exercise great restraint before it reverses a jury verdict due to an erroneous jury instruction. *Adams*, 2007-2110 p. 6, 983 So.2d at 804; *Nicholas*, 1999-2522 p.8,

2

765 So.2d at 1023. We have previously explained the following basis for this rule of law:

> [t]rial courts are given broad discretion in formulating jury instructions and a trial court judgment should not be reversed so long as the charge correctly states the substance of the law. The rule of law requiring an appellate court to exercise great restraint before upsetting a jury verdict is based, in part, on respect for the jury determination rendered by citizens chosen from the community who serve a valuable role in the judicial system. We assume a jury will not disregard its sworn duty and be improperly motivated. We assume a jury will render a decision based on the evidence and the totality of the instructions provided by the judge.
>
> . . . .
>
> In order to determine whether an erroneous jury instruction was given, reviewing courts must assess the targeted portion of the instruction in the context of the entire jury charge "to determine if the charges adequately provide the correct principles of law as applied to the issues framed in the pleadings and the evidence and whether the charges adequately guided the jury in its determination." *Adams*, 2007-2110 p. 7, 983 So.2d at 804; *Nicholas*, 1999-2522 p. 8, 765 So.2d at 1023; *Rosell*, 549 So.2d at 849. The ultimate inquiry on appeal is whether the jury instructions misled the jury to such an extent that the jurors were prevented from dispensing justice. *Adams*, 2007-2110 p. 7, 983 So.2d at 804; *Nicholas*, 1999–2522 p.8, 765 So.2d at 1023.

*Wooley v. Lucksinger*, 09-571, 09-584, 09-585, 09-586, pp. 81-82 (La. 4/1/11), 61 So.3d 507, 574 (quoting *Adams v. Rhodia, Inc.*, 07-2110, p. 6 (La. 5/21/08), 983 So.2d 798, 804)(alteration in original).

Shell did arguably suffer some prejudice in that the jury awarded such a large amount while conceivably under the notion that remediation to state requirements was not assured without a vast award, despite La.R.S. 30:29 guaranteeing cleanup to those levels if the jury found Shell responsible. However, the trial court was also careful to craft a jury verdict form and instructions that accomplished the goals of Act 312, even if the Act and the post-trial procedure

were not specifically mentioned. Most importantly for the case before us, the jury verdict form differentiated between the awards for the costs of cleanup to state regulatory standards and the costs of the private damages the Savoies suffered as a result of Shell's breach of its leases. We do not find that the jury was prevented from dispensing justice because of the instructions from the trial court. Moreover, judicial efficiency requires that we not remand this matter for another month-long trial when we can address the main issue on appeal as discussed below.

*The $34 million question*

Shell's second and third assignments of error will be addressed as one, as they both deal with the main issue in this case—whether the Savoies are entitled to a private judgment for the extra $30 million awarded to them by the trial court and jury *specifically for* remediation of their land to state regulatory standards *in addition to* the actual performance of that remediation at the roughly $4 million cost of the remediation plan actually adopted by the court. We find that the Savoies are not entitled to a private judgment for this additional $30 million.

Louisiana Revised Statutes 30:29 provides, in pertinent part:

> A. The legislature hereby finds and declares that Article IX, Section 1 of the Constitution of Louisiana mandates that the natural resources and the environment of the state, including ground water, are to be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people and further mandates that the legislature enact laws to implement this policy. It is the duty of the legislature to set forth procedures to ensure that damage to the environment is remediated to a standard that protects the public interest. To this end, this Section provides the procedure for judicial resolution of claims for environmental damage to property arising from activities subject to the jurisdiction of the Department of Natural Resources, office of conservation. The provisions of this Section shall be implemented upon receipt of timely notice as required by Paragraph (B)(1) of this Section. The provisions of this Section shall not be construed to impede or limit provisions under private contracts imposing remediation obligations in excess of the requirements of the department or limit the right of a party to a

4

private contract to enforce any contract provision in a court of proper jurisdiction.

. . . .

C. (1) If at any time during the proceeding . . . the finder of fact determines that environmental damage exists and determines the party or parties who caused the damage or who are otherwise legally responsible therefore, the court shall order the party . . . whom the court finds legally responsible for the damage to develop a plan or submittal for the evaluation or remediation to applicable standards of the contamination that resulted in the environmental damage. The court shall order that the plan be developed and submitted to the department and the court within a time that the court determines is reasonable and shall allow the plaintiff or any other party at least thirty days from the date each plan or submittal was made to the department and the court to review the plan or submittal and provide to the department and the court a plan, comment, or input in response thereto. The department shall consider any plan, comment, or response provided timely by any party. The department shall submit to the court a schedule of estimated costs for review of the plans or submittals of the parties by the department and the court shall require the party admitting responsibility or the party found legally responsible by the court to deposit in the registry of the court sufficient funds to pay the cost of the department's review of the plans or submittals. Any plan or submittal shall include an estimation of cost to implement the plan.

(2) Within sixty days from the last day on which any party may provide the department with a plan, comment, or response to a plan as provided in Paragraph (C)(1) of this Section, the department shall conduct a public hearing on the plan or plans submitted. Within sixty days of the conclusion of the hearing, the department shall approve or structure a plan based on the evidence submitted which the department determines to be the most feasible plan to evaluate or remediate the environmental damage and protect the health, safety, and welfare of the people. The department shall issue written reasons for the plan it approves or structures. On motion of the department, for good cause shown, the court may grant the department additional time, not to exceed sixty days, within which to either conduct the hearing or approve a plan with reasons.

(3) The department shall use and apply the applicable standards in approving or structuring a plan that the department determines to be the most feasible plan to evaluate or remediate the environmental damage.

(4) The plan approved by the department for submission to the court shall not be considered to be an adjudication subject to appellate review pursuant to R.S. 49:964 or R.S. 30:12.

(5) The court shall adopt the plan approved by the department, unless a party proves by a preponderance of the evidence that another plan is a more feasible plan to adequately protect the environment and the public health, safety, and welfare. The court shall enter a judgment adopting a plan with written reasons assigned. Upon adoption of a plan, the court shall order the party or parties admitting responsibility or the party or parties found legally responsible by the court to fund the implementation of the plan.

(6)(a) Any judgment adopting a plan of evaluation or remediation pursuant to this Section and ordering the party or parties admitting responsibility or the party or parties found legally responsible by the court to deposit funds for the implementation thereof into the registry of the court pursuant to this Section shall be considered a final judgment pursuant to the Code of Civil Procedure Article 2081 et seq., for purposes of appeal.

. . . .

D. (1) Whether or not the department or the attorney general intervenes, and except as provided in Subsection H of this Section, all damages or payments in any civil action, including interest thereon, awarded for the evaluation or remediation of environmental damage shall be paid exclusively into the registry of the court in an interest-bearing account with the interest accruing to the account for clean up.

(2) The court may allow any funds to be paid into the registry of the court to be paid in increments as necessary to fund the evaluation or remediation and implementation of any plan or submittal adopted by the court. . . .

(3) The court shall issue such orders as may be necessary to ensure that any such funds are actually expended in a manner consistent with the adopted plan for the evaluation or remediation of the environmental damage for which the award or payment is made.

(4) The court shall retain jurisdiction over the funds deposited and the party or parties admitting responsibility or the party or parties found legally responsible by the court until such time as the evaluation or remediation is completed. If the court finds the amount of the initial deposit insufficient to complete the evaluation or remediation, the court shall, on the motion of any party or on its own motion, order the party or parties admitting responsibility or found legally responsible by the court to deposit additional funds into the registry of the court. Upon completion of the evaluation or

remediation, the court shall order any funds remaining in the registry of the court to be returned to the depositor. The department and the parties shall notify the court of the completion of any evaluation or remediation.

. . . .

F. The court and the department shall retain oversight to ensure compliance with the plan. The party or parties admitting responsibility or the party or parties found legally responsible by the court shall file progress reports periodically as the court or the department may require.

. . . .

H. This Section shall not preclude an owner of land from pursuing a judicial remedy or receiving a judicial award for private claims suffered as a result of environmental damage, except as otherwise provided in this Section. Nor shall it preclude a judgment ordering damages for or implementation of additional remediation in excess of the requirements of the plan adopted by the court pursuant to this Section as may be required in accordance with the terms of an express contractual provision.

Shell argues that under La.R.S. 30:29, the jury was not entitled to hear or determine the portion of any case dealing with remediation to state standards, as the statute sets up a post-trial procedure for determining the most feasible plan and its costs. While a straight reading of the statute would render this argument superficially valid, it is clear from the supreme court's decision in *State v. Louisiana Land and Exploration Co.*, 12-884 (La. 1/30/13), 110 So.3d 1038, this argument must fall. There, the court noted[1]:

> The procedure under the Act does not prohibit the award of remediation damages for more than the amount necessary to fund the statutorily mandated feasible plan, ***nor does the procedure described in the Act intrude into the manner in which remediation damages are determined. The Act***

[1] It is clear from reading the entire *Louisiana Land* opinion that the amount of excess "remediation damages" discussed in this paragraph refers to private claims in tort and under contract as considered in La.R.S. 30:29(H), and not claims to remediation to state regulatory levels that serve the public interest. The Savoies are not and have not been precluded from seeking a judicial award for their private claims under the terms of their leases. The jury found they were entitled to $18 million in damages for those private excess remediation claims. The amount of that award is unchallenged and is not at issue here.

*makes no changes to the normal trial procedures established by the Code of Civil Procedure. The only change accomplished by Act 312 is how the damages to remediate property are spent.* Under Act 312, landowners do not receive that portion of the remediation damages award needed to fund the statutorily mandated feasible plan; these funds must be deposited into the registry of the court.

*Id.* at 1049 (emphasis ours).  Moreover, the court went on to say that

The matter proceeds to trial in the same manner as any other proceeding; no provision of the Act changes normal trial procedures. This means pre-trial discovery is conducted and the case proceeds in accordance with the Code of Civil Procedure. Unless a defendant admits responsibility or liability for "environmental damage" as defined by the Act, La. R.S. 30:29(I), *all claims*, *including contractual or private claims, are determined by the finder of fact at trial.*

*Id.* at 1051(emphasis ours)(footnote omitted).

While Shell argues that the procedure established by the Act removes the power to determine the public interest remediation plan and cost therefor from a jury, with this language the supreme court clearly mandates that "all claims," including claims as to remediation to state standards, go before the jury.  That language is clear, unambiguous, and controlling.  Accordingly, the trial court did not err in allowing the jury to hear these claims.

Nevertheless, under the clear language of the statute, the jury is not the ultimate arbiter of the plan to remediate to state standards, the trial court itself is. The trial court is to determine the most feasible plan for remediation to state standards, for the public interest, after the DNR has submitted its plan.  *See* La.R.S. 30:29(C)(1); La.R.S. 30:29(C)(5).  Additionally, "Act 312 changes the remedy available to [plaintiffs] in [their] efforts to obtain surface restoration of [their] immovable property." *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07-2371, p. 32 (La. 7/1/08), 998 So.2d 16, 37.  The remedy for remediation to state regulatory

standards is no longer a private money award, but rather specific performance of the remediation to those state standards that serve the public interest.

Here, the Savoies had the opportunity to submit their own plan to contest the $3.9 million plan submitted by the DNR to the trial court at a preponderance hearing, but ultimately chose not to do so. They probably would have been wise to submit a plan for consideration by the trial court, as their estimation of the cost of remediation to state standards was obviously approved by the jury by a preponderance of the evidence. Since the Savoies waived that right completely of their own volition, the trial court had no choice but to adopt the DNR's plan as submitted. Under La.R.S. 30:29(C)(5)(emphasis ours), "[t]he court *shall* adopt the plan approved by the department, unless a party proves by a preponderance of the evidence that another plan is a more feasible plan to adequately protect the environment and public health, safety, and welfare" than the plan approved by the DNR. The DNR had not yet formulated its plan when the Savoies presented their case to the jury. When the Savoies failed to challenge the DNR's plan after the trial, the trial court acted correctly in adopting that plan as the most feasible plan for remediation to state standards under La.R.S. 30:29(C)(5).

However, "the final decision as to the remediation plan adopted rests with the court." *Louisiana Land,* 110 So.3d at 1049.[2] The DNR plan itself is not a final decision, but basically evidence to be considered by the trial court in ultimately determining the most feasible plan. The trial court is the final arbiter in

---

[2] It is worth noting again for clarity's sake that the "remediation plan" discussed in this quote refers to the plan for remediation to state standards only and not any excess remediation plans that may be required under any contractual terms. Under La.R.S. 30:29, the jury remains the final fact finder as to any plans necessary to remediate beyond state levels to conform with private contracts and/or tort claims.

determining the most feasible plan for remediation to state standards as well as the gatekeeper for overseeing its implementation. *See* La.R.S. 30:29(C)(5).

Despite the Savoies' apparent tactical miscalculation, it seems that the trial court ultimately agreed with the jury's finding on the cost of returning the land to state standards in its own determination of the final plan for remediation to those specifications. The trial court accepted both the DNR plan and the jury's award of $34 million dollars. Here, the trial court, admittedly confused as to how to handle the jury award, entered final judgment granting the $34 million awarded by the jury for state standard remediation to the Savoies personally after subtracting the $3.9 million amount required to fund the DNR plan to remediate to those same state levels. It seems that while the trial court "adopted" the DNR plan, the trial court also gave credence to the jury's award for remediation to state standards. The award given by the jury was determined by the same preponderance of the evidence standard the trial court would have applied in any post-trial hearing. As awkward as the judgment may be, it is clear that the trial court paid respect to the jury's findings and ultimately believed that $34 million was the amount required to remediate the land to state standards. Moreover, the amount of the jury's award is not challenged by Shell, but rather, only the jury's ability to reach that award and the trial court's distribution of it.

The Savoies claim that the excess $30 million should be awarded to them in a private judgment as if that money was awarded for private contract or tort claims. However, it is perfectly clear from both the jury verdict form and the trial court's judgment that this money was awarded specifically for remediation to state standards, to serve the public interest as identified by La.R.S. 30:29, and not for their private "excess" claims, for which they were awarded an additional $18

10

million by the jury and trial court. "Under Act 312, landowners do not receive that portion of the remediation damages award needed to fund the statutorily mandated feasible plan; these funds must be deposited into the registry of the court." *Louisiana Land*, 110 So.3d at 1049. In other words, landowners are not to recover any award made specifically for remediation to state standards, i.e., that amount required to return the land to a state that suits the public interest. It is clear that the Savoies are not entitled to the additional $30 million awarded for remediation to state standards at issue here as if it were part of a private judgment.

*Distribution of Damages for Remediation to State Regulatory Standards*

Subsection D of La.R.S. 30:29 provides how the "most feasible plan" to remediate the property to state requirements is to be implemented. As noted in *Louisiana Land,* 110 So.3d at 1053-54 (emphasis ours):

Subsection (1) states:

> D. (1) Whether or not the department or the attorney general intervenes, and except as provided in Subsection H of this Section, all damages or payments in any civil action, including interest thereon, awarded for the evaluation or remediation of environmental damage shall be paid exclusively into the registry of the court in an interest-bearing account with the interest accruing to the account for clean up.
>
> . . . .

Subsection D(1) must be read with Subsection (H), which provides:

> H. This Section shall not preclude an owner of land from pursuing a judicial remedy or receiving a judicial award for private claims suffered as a result of environmental damage, except as otherwise provided in this Section. Nor shall it preclude a judgment ordering damages for or implementation of additional remediation in excess of the requirements of the plan adopted by the court pursuant to this Section as may be required in accordance with the terms of an express contractual provision. Any award

11

granted in connection with the judgment for additional remediation is not required to be paid into the registry of the court. This Section shall not be interpreted to create any cause of action or to impose additional implied obligations under the mineral code or arising out of a mineral lease.

. . . .

Reading the two subsections together, it is clear that when Subsection D(1) provides: "except as provided in Subsection H . . . all damages . . . awarded for the evaluation or remediation of environmental damage shall be paid exclusively into the registry of the court . . . ," that means the amount of remediation damages necessary to fund the feasible plan adopted by the court, *i.e.* ***all damages awarded for the evaluation or remediation of environmental damage to a standard that protects the public interest.***

We find that, because the trial court and jury *specifically* awarded the $34 million for remediation to state requirements, which is clearly for the public interest and not the Savoies' private interest, the entire $34 million judgment should go into the registry of the court until the remediation is complete. We note here again that "[u]nder Act 312, landowners do not receive that portion of the remediation damages award needed to fund the statutorily mandated feasible plan," i.e., remediation to state standards and regulations. *Louisiana Land*, 110 So.3d at 1049. At the time the trial court is satisfied that its plan has been complied with, any remaining money in the registry should be returned to Shell, as noted in the trial court's judgment. Accordingly, we hereby amend the judgment of the trial court to place the entire $34 million award for the remediation of "the Savoie property to Louisiana standards and regulations" into the registry of the court to fund the implementation of the cleanup plan adopted by the trial court.

Because we place that award into the registry of the court, where any unused portion will be returned to Shell, we need not address Shell's argument that the distribution of the award would amount to a double recovery for the Savoies.

12

*Motion for Directed Verdict*

Shell next claims the trial court erred in denying its motion for directed verdict on the Savoies' "excess" remediation damages claims. These claims arose out of the specific leases Shell had with the Savoies and involve cleanup beyond the requirements of the state regulations to the requirements of these leases. Shell claims that the "only evidence on this issue was that the regulations and the contracts required the same level of restoration." We disagree.

This court, in *Hebert v. BellSouth Telecommunications, Inc.,* 01-223, pp. 4-5 (La.App. 3 Cir. 6/6/01), 787 So.2d 614, 617, *writ denied,* 01-1943 (La. 10/26/01), 799 So.2d 1145, stated the following:

> The applicable standard of review for [a motion for directed verdict] is found in *Busby v. St. Paul Insurance Co.,* 95-2128, pp. 16-17 (La.App. 1 Cir. 5/10/96); 673 So.2d 320, 331, *writ denied,* 96-1519 (La.9/20/96); 679 So.2d 443, which states:
>
>> A trial court has much discretion in determining whether or not to grant a motion for directed verdict. *New Orleans Property Development, Ltd. v. Aetna Casualty and Surety Company,* 93-0692 (La.App. 1st Cir. 4/8/94); 642 So.2d 1312, 1315; *Belle Pass Terminal, Inc. v. Jolin, Inc.,* 92-1544 and 92-1545 (La.App. 1st Cir. 3/11/94); 634 So.2d 466, 478, *writ denied,* 94-0906 (La.6/17/94); 638 So.2d 1094; *Barnes v. Thames,* 578 So.2d 1155, 1162 (La.App. 1st Cir.), *writ denied,* 577 So.2d 1009 (La.1991). A motion for directed verdict is appropriately granted in a jury trial when, after considering all evidentiary inferences in the light most favorable to the movant's opponent, it is clear that the facts and inferences are so overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict. *New Orleans Property Development, Ltd.,* 642 So.2d at 1315; *Belle Pass Terminal, Inc.,* 634 So.2d at 478; *Barnes,* 578 So.2d at 1162. However, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury. *New Orleans*

> *Property Development, Ltd.,* 642 So.2d at 1315; *Belle Pass Terminal, Inc.,* 634 So.2d at 478.
>
> On appeal, the standard of review for directed verdicts is whether, viewing the evidence submitted, the appellate court concludes that reasonable people could not reach a contrary verdict. *New Orleans Property Development, Ltd.,* 642 So.2d at 1315; *Belle Pass Terminal, Inc.,* 634 So.2d at 478.

Shell does not challenge the amount of jury's $18 million award for remediation to the requirements of the contract. Instead, Shell claims that the requirements of the contract and the state regulations are the same, despite the jury's clear opinion on the matter. Of a voluminous record of over 17,000 pages, Shell's argument is based on two sentences from the testimony of the Savoies' expert witnesses wherein the experts pronounce that the state regulations require a "similar" cleanup standard as the lease provisions that required the land be cleaned up to the "background" condition that existed prior to the lease beginning. However, Shell ignores testimony from those same experts that differentiates between what was required to meet the rules and regulations that the State of Louisiana has adopted and that which would be applicable to the Savoies' lease, including running the cleanup systems for longer times at a greater expense.

It is clear that the jury in this case heard and weighed evidence from competing experts for over four weeks and came to the conclusion that there were, indeed, requirements that arose from the leases that exceeded the state regulations and that it would take $18 million to restore the property as required by the leases *beyond* what was required by state regulations. We do not find that the facts and inferences point so overwhelmingly in Shell's favor that that determination of the jury was impermissible. Accordingly, we do not find that the trial court abused its

14

discretion in failing to grant Shell's motion for directed verdict. This assignment of error is devoid of merit.

*Savoies' Answer*

Finally, the Savoies answer Shell's appeal. The Savoies originally asserted eight assignments of error in their answer. However, only one was briefed. "All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed." Uniform Rules-Courts of Appeal, Rule 2-12.4; *Grantt Guillory Enters., Inc. v. Quebedeaux*, 12-931, p. 5 (La.App. 3 Cir. 2/6/13), 110 So.3d 182, 186. Accordingly, we will only consider the lone briefed assignment of error, the allegation that the trial court erred in awarding interest on the judgment from the date of judicial demand, rather than from the date of the breach of the leases.

> While it is generally true that judicial interest should accumulate from the date of breach in contract cases, as opposed to the date of judicial demand, the supreme court in *Trans-Global Alloy Limited v. First National Bank of Jefferson Parish,* 583 So.2d 443 (La.1991), has held that in "highly complicated" cases where the issues are whether a breach has occurred and the appropriate damage amount, it is appropriate to award interest from the date of judicial demand.

*Ashy v. Trotter*, 04-612, p. 21 (La. App. 3 Cir. 11/10/04), 888 So.2d 344, 357, *writs denied,* 05-180, 05-347 (La. 3/24/05), 896 So.2d 1045, 1047. The Savoies correctly concede that this is the law. However, they claim that this case, which involved a four-week trial and a roughly 17,000 page record of highly technical evidence concerning several leases, dramatic environmental damage, and highly contested fights over how the land should be cleaned and the appropriate cost thereof, is not a "complicated" case. We disagree. We find this case clearly falls into the "highly complicated" category. Thus, we find no error in the trial court's

award of legal interest from the date of judicial demand. This assignment of error is without merit.

For the above reasons, we hereby amend the judgment of the trial court to order the entire $34 million award for the remediation of "the Savoie property to Louisiana standards and regulations" to be paid into the registry of the trial court to fund the implementation of the plan adopted to meet that end. We affirm the remainder of the judgment of the trial court as amended. Costs of this appeal are assessed to the defendants.

**AFFIRMED AS AMENDED.**